**Douglas B. FIRESTONE, et al., Plaintiffs,**

v.

**Daniel M. GALBREATH, etc., et al., Defendants.**

**No. C2–89–840.**

United States District Court, S.D. Ohio, E.D.

July 3, 1990.

Mark Alan Vanderlaan, Dinsmore & Shohl, Cincinnati, Ohio, for Douglas Firestone.

Robert Myron Kincaid, Jr., Baker & Hostetler, Columbus, Ohio, for Daniel Galbreath.

David Joseph Young, Squire, Sanders and Dempsey, Columbus, Ohio, Phillip R. Forlenza, New York City, for Bricker & Eckler, John Eckler and Charles Waterman, III.

Craig Denmead, Denmead, Blackburn & Willard, Columbus, Ohio, John P. Harris, Louis G. Adolfsen, Siff, Rosen & Parker, New York City, for Bolon Hart & Buehler, Inc.

John W. Clark, Jr., Clark, Wiley & Goodall, Dallas, Tex., for Leigh E. Firestone.

Neil B. Jagolinzer, West Palm Beach, Fla., for Mark Firestone.

Paul T. Shoemaker, Liddle, O'Connor, Finkelstein & Robinson, New York City, for David M. and Jeffrey Firestone.

John Patrick Mazza, Roetzel & Andress, Columbus, Ohio, for Deborah Lynn Firestone.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

This is a civil action brought by two grandchildren of the late Dorothy B. Galbreath against the estate of John W. Galbreath, her late husband, as well as members of the Galbreath family and business entities owned or controlled by the Galbreath family. Also named as defendants are the law firm of Bricker and Eckler, and John Eckler, David C. Cummins, Charles H. Waterman, III, and John W. Phillips (also a

Galbreath family member), partners of that firm. The defendants further include the accounting firm of Bolon, Hart and Buehler, Inc., and Dolorees I. Dutoit, an employee of John Galbreath who allegedly acted as financial secretary for Dorothy Galbreath. Eight other Firestone grandchildren of Dorothy Galbreath who were named as defendants in the complaint have since been realigned as plaintiffs. Plaintiffs bring this action individually and on behalf of the estate of Dorothy Galbreath and the Dorothy Brian Galbreath Family Trust ("Family Trust"), an intervivos trust created by an instrument dated October 31, 1978 allegedly for the benefit of plaintiffs.

The complaint was originally filed on December 6, 1988 in the United States District Court for the Southern District of New York. On September 28, 1989, the District Court in New York granted the motion of various defendants to transfer this case to the Southern District of Ohio. Certain motions to dismiss were pending at that time, and on October 30, 1989, this court entered an order directing that "any defendant may file a new or supplemental motion to dismiss on or before December 1, 1989." On December 1, 1989, a motion to dismiss was filed by Bolon, Hart & Buehler, Inc. ("Bolon, Hart") and by Bricker and Eckler, John Eckler, David C. Cummins, John W. Phillips and Charles H. Waterman, III (the "Bricker defendants"). A motion to dismiss was also filed on that date on behalf of Daniel M. Galbreath, Joan Galbreath Phillips, James W. Phillips, Lizanne Galbreath, the Estate of John W. Galbreath, the John W. Galbreath Trust, John W. Galbreath's Darby Dan Farm Trust, Darby Dan Farm, John W. Galbreath & Co., Inc., the Galbreath-Ruffin Corporation, the Akron Redevelopment Corporation and Dolorees I. Dutoit (the "Galbreath defendants").

On January 2, 1990, plaintiffs filed a consolidated memorandum contra defendants' motions to dismiss. Defendants filed reply memoranda on January 8, 1990, and on January 9, 1990, oral arguments were heard on the motions. Thereafter, the parties filed various supplemental memoranda and replies on January 19, January 24 and January 26, 1990. On February 7, 1990, plaintiffs filed a motion for leave to file a supplemental memorandum in opposition to defendants' motions to dismiss. That motion is hereby granted. On April 11, 1990, this court requested additional briefs on the issue of plaintiffs' standing to assert claims on behalf of the estate and the Family Trust, and the parties subsequently filed supplemental memoranda. The motions to dismiss are now before the court for a ruling.

 A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if there is no law to support the claims made, if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

## SUBJECT MATTER JURISDICTION; ABSTENTION; STANDING

The defendants have moved to dismiss plaintiffs' complaint on the basis of lack of subject matter jurisdiction. Defendants invoke the "probate exception" to federal court jurisdiction. In the alternative, defendants have moved this court to abstain from exercising jurisdiction in light of the will contest action filed by plaintiffs in the Probate Court of Franklin County, Ohio. That action challenged the validity of the 1978 will of Dorothy Galbreath. Defendants also challenge the standing of plaintiffs to bring suit in light of the will contest action. Since the filing of defendants' mo-

tions to dismiss, plaintiffs have dismissed their complaint in probate court.

■ It is well established that federal courts have no probate jurisdiction. *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946); *Tonti v. Petropoulous*, 656 F.2d 212 (6th Cir.1981). A federal court has no jurisdiction to probate a will or to administer an estate. *Markham*, 326 U.S. at 494, 66 S.Ct. at 298. However, a federal court does have jurisdiction to entertain suits by heirs against a decedent's estate so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. *Id.* Likewise, a federal court may adjudicate rights to property in the possession of a state court where the final judgment does not interfere with the state court's possession except to the extent that the state court is bound by the judgment to recognize the rights adjudicated by the federal court. *Id.*

■ In this case, plaintiffs seek to recover assets from the defendants which they claim should have been included in the estate of Dorothy Galbreath and which would have benefitted the Family Trust. Thus, this is not an action which involves the administration of the estate, or any other matter within the exclusive jurisdiction of the probate court or which would interfere with any proceedings currently pending in the probate court. This is not a case which falls within the probate exception to this court's subject matter jurisdiction.

■ Defendants also urge this court to abstain from exercising jurisdiction. However, the basis for those motions, the risk of conflicting adjudications due to the pendency of plaintiffs' will contest action, has now been removed. The Galbreath defendants filed a motion in probate court on January 25, 1990 seeking a hearing at which it could be determined whether there were any disputes as to the validity of Mrs. Galbreath's will. The outcome of that motion, if any, has not been forwarded to this court. However, defendants have offered no evidence at this time that any further action will be taken by any of the parties to contest the validity of the will. There is no necessity at this point to stay or dismiss this case out of deference to state court litigation. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Defendants also challenge plaintiffs' standing to maintain this action because of the uncertainty concerning their status as heirs due to the will contest action. However, plaintiffs have now dismissed their will contest action and no other challenge to plaintiffs' position as the beneficiaries of the Family Trust established in that will is currently pending. This branch of defendants' motion is denied as moot.

Defendants further challenge the standing of plaintiffs to assert claims on behalf of the estate and the Family Trust. With the exception of noting a letter dated September 22, 1988, in which plaintiffs demanded that Daniel Galbreath, as executor of Mrs. Galbreath's estate and trustee of the Family Trust, make formal presentations of claims on behalf of the estate and the Family Trust against the estate of John Galbreath in accordance with Chapter 2117 of the Ohio Revised Code, plaintiffs do not allege that they have made a demand upon Daniel Galbreath in any of his capacities to institute an action to assert the claims which plaintiffs now bring.

■ The general rule is that the heirs of a decedent cannot maintain an action in their own names to assert claims or recover assets belonging to the estate. *Davis v. Corwine*, 25 Ohio St. 668 (1874); *Phillips v. McConica*, 59 Ohio St. 1, 51 N.E. 445 (1898); *McBride v. Vance*, 73 Ohio St. 258, 76 N.E. 938 (1906); *Floyd v. Clyne*, 108 Ohio App. 16, 154 N.E.2d 771 (1958). However, there is an exception to this general rule where the heirs have made a demand upon the executor to bring the action and the executor has refused to do so. *Ex parte Bevan*, 126 Ohio St. 126, 184 N.E. 393 (1933); *Fecteau v. Cleveland Trust Co.*, 171 Ohio St. 121, 167 N.E.2d 890

(1960). In such a case, the heirs may bring the action for the benefit of the estate. This common-law rule has also been incorporated into the provisions of § 2107.46, Ohio Revised Code, which governs actions filed in probate court. That section provides in part that when "any fiduciary fails for thirty days to bring such action after a written request from a party in interest, the party making the request may institute the suit."

However, the present case is further complicated by the fact that plaintiffs are not specifically designated as heirs under the will of Dorothy Galbreath. Rather, they are beneficiaries of an inter vivos trust, and it is the Family Trust which is designated as the beneficiary under the residuary clause of the will.

■ Under Ohio law, the trustee of the trust is vested with legal title of the trust property, and while so vested, the trustee has the power to sue to protect or preserve the trust *res*. *Schofield v. Cleveland Trust Co.*, 149 Ohio St. 133, 78 N.E.2d 167 (1948); *Dickerson v. Curtin*, 80 Ohio App. 486, 76 N.E.2d 619 (1947). While the trustee is generally considered the proper party to sue on behalf of the trust, a suit by beneficiaries has been allowed where the trustee refuses to bring the action. *Saxton v. Seiberling*, 48 Ohio St. 554, 29 N.E. 179 (1891). The rule is stated in IV *Scott on Trusts* § 294.1, p. 98–99 (4th Ed.1989), as follows:

> [I]f a third person commits a tort with respect to the trust property, the trustee and not the beneficiary is ordinarily the proper party to bring an action against him. The beneficiary can maintain a suit in equity against the tortfeasor only if the trustee improperly refuses or neglects to bring an action, or if the trustee cannot be subjected to the jurisdiction of the court, or if there is a vacancy in the office of trustee.

The interest of the beneficiary of a trust is an equitable interest and ordinarily is protected by suits in equity rather than by actions at law. IV *Scott on Trusts* § 281, p. 21 (4th Ed.1989). Where the trustee improperly refuses to bring suit against a third person, the beneficiaries can maintain an action in equity against the trustee to bring an appropriate action, and may at the same time join the third party as a co-defendant with the trustee. IV *Scott on Trusts* § 282.1, p. 30 (4th Ed.1989). However, if the trustee does not commit a breach of trust in failing to bring an action against a third party, the beneficiaries cannot maintain an action against the trustee or the third party. *Id.* at 32.

■ Thus, plaintiffs' standing to sue on behalf of the Family Trust depends upon their making a demand upon the trustee to bring an action asserting their claims, and the trustee's improper refusal to institute the action. Actually, since they are twice removed from the entity which owns the the causes of action they seek to enforce, the estate of Dorothy Galbreath, they must demand that the trustee of the Family Trust make demand on the executor to bring an action on behalf of the estate. Plaintiffs have failed to allege in their complaint that they have made a demand upon the trustee of the Family Trust to make demand on the executor to bring this action, or that the trustee has improperly refused to do so. Plaintiffs have therefore not complied with the prerequisites of establishing standing to sue on behalf of the Family Trust. Plaintiffs have further failed to allege that the trustee has made any demand upon the executor of Mrs. Galbreath's estate to bring this action, and that the executor has refused to do so, and therefore have not established their standing to assert claims on behalf of the estate. Despite plaintiffs' argument that to make such a demand would be futile, the court concludes that the demand requirement cannot be circumvented. Indeed the Court cannot conclude that such a demand would be futile. The executor may well decide to bring an action asserting some or all of the claims or he may resign and his successor may do so. Plaintiffs have not pleaded sufficient facts to establish their standing to represent the Family Trust and the estate in this action, and all claims made on behalf of the Family Trust and the estate must be dismissed without prejudice.

At this point, it is a matter of speculation as to what action, if any, the parties will take in response to the court's order. Plaintiffs may make a demand upon Daniel Galbreath to file an action on behalf of the trust and the estate, and his response is at this point unknown. However, the court notes that even if an appropriate demand is later made by the plaintiffs, serious issues regarding plaintiffs' standing remain to be decided. For example, how is it to be determined whether the trustee or executor is acting in good faith in pursuing or declining to pursue a cause of action Defendant Galbreath may have the right under Ohio law to seek instructions from the probate court in that regard.

Additionally, without deciding the issue at this point, significant questions remain as to whether plaintiffs, in their twice-removed beneficiary status, are proper parties to maintain this action on the part of the estate. The exception which allows trust beneficiaries to bring suit is an equitable one. Here, other adequate remedies are available to plaintiffs, since under the terms of the trust, a majority of the trust beneficiaries may remove defendant Galbreath as trustee and may obtain the appointment of a substitute corporate trustee. The inclusion of this provision in the trust suggests that Mrs. Galbreath desired that a corporate trustee be appointed to represent the interests of all the trust beneficiaries rather than having individual beneficiaries act in that capacity. As a matter of policy, it could be argued that some deference should be accorded to her intent. Issues likewise remain as to whether plaintiffs' personal interests are compatible with the interests of the estate as a whole, and whether, even occupying the position of the trustee in the litigation, they would be appropriate representatives of the estate.

Although the court has granted defendants' motion to dismiss claims asserted on behalf of the Family Trust and the estate, the court, in the interests of economy, will address the remaining arguments raised by the motions to dismiss. Henceforth, the court will indicate where a claim on behalf of the Family Trust or the estate survives a

motion to dismiss. However, these holdings are contingent upon standing to assert those claims being established.

## MOTION TO DISMISS OF BOLON, HART

Defendant Bolon, Hart is an accounting firm which has provided accounting services to Mrs. Galbreath and various of the Galbreath defendants. Plaintiffs allege that Bolon, Hart assisted in the wrongful transfer of Mrs. Galbreath's property through the preparation of gift and estate tax returns. In the fifty-fifth claim, plaintiffs allege conversion of property. They seek a constructive trust in the fifty-sixth claim, and in the fifty-sixth and sixty-fifth claim, they allege breach of fiduciary duty. In the fifty-eighth and sixty-sixth claim, plaintiffs allege that Bolon, Hart was guilty of negligence and malpractice in the handling of Mrs. Galbreath's affairs. The sixty-seventh claim alleges breach of contract, and the fifty-seventh and sixty-eighth claims allege fraud. Claims number fifty-nine and sixty-nine allege tortious interference with expectancy. Plaintiffs have also made claims against Bolon, Hart under the Racketeer Influenced and Corrupt Organizations ("RICO") provisions of 18 U.S.C. § 1961 *et seq.*

Bolon, Hart claims that plaintiffs lack standing to bring claims based on malpractice or gross negligence. Defendant relies on *Haddon View Investment Co. v. Coopers & Lybrand,* 70 Ohio St.2d 154, 436 N.E.2d 212 (1982), in which the Ohio Supreme Court held that accountants may be sued for negligence or malpractice by third parties only when the third parties are part of a contemplated group whose reliance on the accountants' work is specifically foreseen.

 Plaintiffs and the Family Trust were not the clients of Bolon, Hart, nor were they conceivably a part of a contemplated group whose reliance should have been specifically foreseen. The court finds that the facts alleged in the complaint do not support a claim of liability on the part of Bolon, Hart to plaintiffs in their individ-

ual capacities or to the Family Trust. Therefore, Bolon, Hart's motion to dismiss the negligence and malpractice claims brought by plaintiffs in their individual capacities and on behalf of the Family Trust is granted. Plaintiffs have alleged sufficient facts to state a claim of negligence or malpractice on behalf of the estate. The motion to dismiss the negligence and malpractice claims brought on behalf of the estate is denied.

 Bolon, Hart also moves to dismiss plaintiffs' claim for breach of contract. Plaintiffs have alleged no facts in their complaint which indicate that plaintiffs themselves or the Family Trust had a contractual relationship with Bolon, Hart or which indicate that plaintiffs were in privity with Mrs. Galbreath. In addition, the complaint does not allege the existence of any express contractual agreement between Bolon, Hart and Mrs. Galbreath. At most, this claim is a restatement of the malpractice/negligence claim. Bolon, Hart's motion to dismiss the breach of contract claim is granted.

 Bolon, Hart further asserts that the claims for breach of fiduciary duty should be dismissed. Plaintiffs have alleged no facts to indicate how Bolon, Hart would owe any fiduciary duty to plaintiffs as individuals or to the Family Trust. Therefore, Bolon, Hart's motion to dismiss this claim is granted insofar as it applies to plaintiffs individually and to the Family Trust.

Plaintiffs have also alleged that Bolon, Hart breached a fiduciary duty to Mrs. Galbreath and her estate in preparing certain gift and estate tax returns. A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking. A fiduciary relationship is a special relationship of trust and confidence. *Warren v. Percy Wilson Mortgage & Finance Corp.*, 15 Ohio App.3d 48, 472 N.E.2d 364 (1984). What constitutes a confidential or fiduciary relationship between parties is a question of fact dependent upon the circumstances of each case. Construing the complaint lib-

erally in favor of plaintiffs, the court cannot say that plaintiffs would be unable to prove any set of facts which would entitle the estate to relief on this claim. Therefore, Bolon, Hart's motion to dismiss the breach of fiduciary duty claims insofar as they are being pursued on behalf of the estate is denied.

 Bolon, Hart has also moved to dismiss the state law claims of malpractice, negligence, constructive trust, breach of fiduciary duty and conversion which relate to services performed prior to December 6, 1984 on the basis that these claims are barred by the statute of limitations contained in § 2305.09, Ohio Revised Code. Actions based upon the negligence or malpractice of an accountant are governed by the four-year statute of limitations contained in that section. *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989). The discovery rule is not available in the case of negligence claims, but does apply to claims sounding in fraud or conversion. *Id.*, 546 N.E.2d at 212.

Plaintiffs argue in return that this case is governed by the provisions of § 2305.16, Ohio Revised Code, which tolls the limitations period when a claimant is "of unsound mind." The first paragraph of that section governs situations where the cause of action accrues at a time when the person entitled to bring the action is "of unsound mind." Under the terms of that paragraph, the running of the limitations period is tolled until the disability is removed. The second paragraph refers to situations where the person entitled to bring the action becomes incompetent after the cause of action accrues. This provision sets forth an exception to the common law rule that incompetency arising after a cause of action accrues does not toll the limitations period. To establish this exception, it must be shown that the plaintiff was of unsound mind, and further that the plaintiff was either 1) adjudicated as being of unsound mind by a court of competent jurisdiction, or 2) was confined in an institution or hospital under a diagnosed condition or disease which rendered him of unsound mind.

These allegations must be set forth in the complaint. *Mills v. Whitehouse Trucking Co.*, 40 Ohio St.2d 55, 320 N.E.2d 668 (1974); *Hitchcock v. State*, Slip Op. No. 81AP–33, Franklin County Court of Appeals, 1981 WL 3271 (1981).

■ Plaintiffs have alleged in their complaint that Mrs. Galbreath became mentally incompetent in October of 1978. Assuming for purposes of the motion that plaintiffs could prove incompetency as of that time, under the first paragraph of § 2305.16, the running of the limitations period as to claims which accrued after she became incompetent was tolled during the period of her incompetency until her death on February 24, 1986. Plaintiffs' complaint was filed on December 6, 1988. Therefore, plaintiffs' complaint is sufficient to withstand a motion to dismiss filed in regard to any post-incompetency claims.

In regard to any claims which allegedly accrued prior to the onset of Mrs. Galbreath's incompetency, however, plaintiffs have failed to allege sufficient facts in their complaint to demonstrate that the exception in § 2305.16 applies in this case. The defense of limitations may be asserted by a motion to dismiss where the allegations in the complaint show that the action was not brought within the statutory period. *Rauch v. Day & Night Manuf. Corp.*, 576 F.2d 697 (6th Cir.1978). This is likewise the rule where the complaint fails to allege facts which would invoke an exception to a limitations statute. *Horn v. Burns and Roe*, 536 F.2d 251 (8th Cir. 1976); *Kincheloe v. Farmer*, 214 F.2d 604 (7th Cir.1954). Here, plaintiffs have failed to allege sufficient facts which would trigger either branch of the exception in the second paragraph of § 2305.16.

Plaintiffs have likewise failed to allege sufficient facts to invoke the discovery exception to the statute of limitations applicable to fraud claims. As the court noted in *Stewart Coach Industries, Inc. v. Moore*, 512 F.Supp. 879, 886 (S.D.Ohio 1981), a discovery rule is an exception to a statute of limitations, and where the facts alleged in the complaint indicate that the cause of action is barred by the statute of limita-

tions, "it becomes the duty of the plaintiff who seeks to rely on the discovery rule to affirmatively and particularly plead the date of discovery, as a material averment under F.R.C.P. 9(b), (f), or face dismissal of the complaint." *Accord Peterson v. Teodosio*, 34 Ohio St.2d 161, 297 N.E.2d 113 (1973).

The court therefore concludes that Bolon, Hart's motion to dismiss the pre-incompetency claims alleged against it is well taken.

■ Bolon, Hart has moved to dismiss claims fifty-nine and sixty-nine, which allege tortious interference with expectancy. Defendant relies on *Cunningham v. Edward*, 52 Ohio App. 61, 3 N.E.2d 58 (1936). In *Cunningham*, the plaintiff, decedent's sister, alleged that due to the threats of her sister's husband, her sister died intestate without signing a prepared will in which she had bequeathed property to the plaintiff. The court in *Cunningham* declined to recognize a cause of action for tortious interference, stating that "if plaintiff has any cause of action in tort against said husband it can arise only out of the invasion of a legal right of Jessie Cunningham by said husband." *Id.*, 52 Ohio App. at 67, 3 N.E.2d 58. The court went on to note, *Id.* at 68, 3 N.E.2d 58, that plaintiff

had no interest in the property of which she says she has been deprived by the fraudulent interference of said husband, beyond a mere naked possibility; an interest which might, indeed, influence her hopes and expectations, but which is altogether too shadowy and evanescent to be dealt with by courts of law.

The question of whether a cause of action for tortious interference with expectancy is recognized under Ohio law has not yet been addressed by the Ohio Supreme Court. However, in *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (1987), that court cited *Cunningham* with approval in holding that a beneficiary under a will lacked privity with the testator so as to be able to sue the testator's attorney for malpractice "since appellee, as a potential beneficiary of his father's estate, had no vested interest in the estate."

Plaintiffs have not cited any Ohio case which recognizes a cause of action for tortious interference with expectancy. Plaintiffs rely on cases from other jurisdictions which seemingly acknowledge such a cause of action. However, this court concludes that it is unlikely that Ohio courts would do so. *Cunningham* is a well-reasoned opinion which has never been criticized by another court, nor has the Ohio Legislature seen fit to enact a statute, in light of *Cunningham*, creating a cause of action for tortious interference with expectancy.

■ Plaintiffs have alleged no greater interest in Mrs. Galbreath's property than the plaintiff in *Cunningham*. In fact, unlike the plaintiffs in the out-of-state cases relied on by plaintiffs, who claimed to have been deprived of a direct inheritance, plaintiffs here are the beneficiaries of a trust into which certain assets were to flow through the residuary clause in the will. The court concludes that plaintiffs' fifty-ninth and sixty-ninth claims do not state a cause of action, and Bolon, Hart's motion to dismiss those claims is granted.

■ Bolon, Hart also moves to dismiss the claims asserted against it under the federal RICO provisions. Bolon, Hart's first argument is based upon plaintiffs' will contest action, which has now been dismissed. Thus, that argument is moot. Bolon, Hart also argues that plaintiffs lack standing to assert RICO claims because they have alleged no direct injury to their business or property as required by 18 U.S.C. § 1964(c). In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Supreme Court held that in asserting a claim under RICO, 18 U.S.C. § 1962, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."

In *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542 (6th Cir. 1985), the court held that a shareholder and employee of a corporation lacked standing to pursue RICO claims for injuries inflicted upon the corporation. Bolon, Hart argues that plaintiffs' claims here are analogous to

those made in *Warren,* since the injury alleged was to Mrs. Galbreath's estate, and plaintiffs have not alleged any direct injury to their business or property by reason of any unlawful activity.

The court finds that Bolon, Hart's arguments are well taken insofar as they relate to plaintiffs' claims in their individual capacities and to those claims brought on behalf of the Family Trust. The injuries alleged in the complaint were injuries to Mrs. Galbreath and her estate. Any injuries allegedly sustained by plaintiffs and the Family Trust were not directly caused by the alleged wrongful acts and were at most "merely incidental" to the injuries of Mrs. Galbreath and her estate. *Warren,* 759 F.2d at 545. Therefore, the motion to dismiss is granted as to those claims. However, the executor of an estate would have standing under RICO to pursue an action for the direct injuries caused to the decedent and the estate. Bolon, Hart's motion to dismiss the estate's RICO claims on the basis of standing is denied.

Bolon, Hart next alleges that plaintiffs have failed to comply with Fed.R.Civ.P. 9(b) in regard to the common-law fraud claims and the RICO claims which are grounded in fraud. Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) must be read in conjunction with Fed.R.Civ.P. 8(a), which requires "a short and plain statement of the claim," and with Fed.R.Civ.P. 8(e), which calls for "simple, concise, and direct averments in pleadings." *Michaels Building Co. v. Ameritrust Co., N.A.,* 848 F.2d 674 (6th Cir. 1988). The purpose behind Rule 9(b)'s particularity requirement is to provide a defendant with fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. It is generally held that compliance with Rule 9(b) requires the pleader to specify the time, place, speaker and content of the alleged misrepresentations. *DiVittorio v.*

*Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

■ Plaintiffs allege in the fifty-seventh claim that Bolon, Hart was under a duty to inform Mrs. Galbreath that certain transfers of property effected prior to her mental incapacity were not in her best interests or consistent with her testamentary plan. In this claim, plaintiffs seek to allege actual fraud by concealment. Under Ohio law, this tort requires actual concealment of a material fact, with knowledge of the concealment and with intent to mislead another into relying upon such conduct, followed by actual reliance by such other person, having a right to so rely, with injury resulting to such person because of such reliance. See *Crum v. McCoy*, 41 Ohio Misc. 34, 322 N.E.2d 161 (Mun.Ct.1974). The period of time referred to in this paragraph is the period prior to Dorothy Galbreath's mental incapacity which spans a period of approximately 23 years, beginning with the date of her marriage to John Galbreath in 1955. These allegations do not constitute even colorable compliance with Rule 9(b) and plaintiffs' fifty-seventh claim for relief does not state a claim for fraud against Bolon, Hart upon which relief can be granted. Accordingly, Bolon, Hart's motion to dismiss this claim is well taken and is granted.

■ Plaintiffs allege in their sixty-eighth claim that Bolon, Hart committed fraud upon Mrs. Galbreath by preparing and submitting invalid gift tax returns at a time when she was incapable of giving her consent. In paragraphs 259 through 262, plaintiffs set forth facts concerning Bolon, Hart's preparation of allegedly improper gift tax returns reflecting "invalid gifts" by Dorothy Galbreath to "Daniel Galbreath, Joan Phillips, James Phillips, various charities and others." Plaintiffs further allege that the gift tax returns "also reflect the improper payment from Dorothy Galbreath's funds of gift taxes payable on various improper gifts." Plaintiffs allege that Bolon, Hart participated in proceedings with the IRS with respect to deficiencies and corrections claimed to specific gift tax returns. In paragraph 262, plaintiffs allege that "Bolon, Hart knew or should have known" that the gift tax returns "reflected invalid gifts made with her funds and the improper payment out of her funds of gift taxes," and that Bolon, Hart misrepresented to the IRS that the gifts were valid, and failed to challenge the gifts "which they knew or should have known were invalid."

Plaintiffs' allegations are insufficient to state a claim for actual fraud under Ohio law. The elements of actual fraud require a showing of actual or implied representations or concealment of a material fact, made falsely with express or implied knowledge of falsehood, with the intent of misleading another person into relying on it, with the resulting reliance on the part of that person with right to rely and injury resulting to that person as the result of that reliance. *Schwartz v. Capitol Savings & Loan Co.*, 56 Ohio App.2d 83, 381 N.E.2d 957 (1978); *Manning v. Len Immke Buick, Inc.*, 28 Ohio App.2d 203, 276 N.E.2d 253 (1971). Plaintiffs have failed to plead the above elements in conjunction with the sixty-eighth claim.

■ Ohio law also recognizes the equitable concept of constructive fraud. Constructive fraud requires no proof of fraudulent intent; rather, the law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private. *Perlberg v. Perlberg*, 18 Ohio St.2d 55, 247 N.E.2d 306 (1969). Constructive fraud often arises due to a special confidential or fiduciary relationship between the parties which affords the power and means to one party to take undue advantage of or exercise undue influence over another. *Hanes v. Giambrone*, 14 Ohio App.3d 400, 471 N.E.2d 801 (1984). Constructive fraud may result from the circumstances of the transaction. *Pfisterer v. Toledo, Bowling Green & Southern Traction Co.*, 89 Ohio St. 172, 106 N.E. 18 (1913); *Taylor v. Shields*, 64 Ohio L.Abs. 193, 111 N.E.2d 595 (App.1951) (constructive fraud found where one party to a confidential relationship exerted undue in-

fluence upon the other party who was debilitated by illness).

The court concludes that the allegations in the sixty-eighth claim are sufficient to charge Bolon, Hart with constructive fraud, limited to whatever injury resulted to Mrs. Galbreath as a result of paying gift taxes on gifts which Bolon, Hart allegedly knew she was incapable of making. To the extent that claim sixty-eight is so limited, defendant's motion to dismiss is denied. Claim sixty-eight states a claim of constructive fraud solely as to Mrs. Galbreath and her estate. Therefore, this claim is dismissed insofar as it is asserted on behalf of plaintiffs individually and the Family Trust.

Bolon, Hart also argues that plaintiffs have failed to allege the necessary scienter for the predicate acts of mail fraud alleged in conjunction with their RICO claims. The mail and wire fraud statutes require a showing of intentional fraud, as well as an allegation as to misrepresentations or omissions of material fact made by the defendant to the plaintiffs that they reasonably relied upon to their detriment. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987); *Bender v. Southland Corp.,* 749 F.2d 1205 (6th Cir.1984).

■ This court agrees that the complaint lacks the allegations necessary to assert RICO claims based on mail and wire fraud. A review of the various allegations of mail fraud reveals that only one transaction is referred to with any degree of specificity, that being the mailing of the estate tax return, although even there, the exact nature of Bolon, Hart's participation in the mailing is not revealed. The elements of mail fraud include the existence of a scheme to defraud, participation by the defendant in the charged scheme with specific intent to defraud, and the use of the mails with the purpose to execute the scheme. *United States v. Burks,* 867 F.2d 795 (3d Cir.1989); *United States v. Shipp,* 359 F.2d 185 (6th Cir.1966). Plaintiffs have failed to allege how Bolon, Hart participated in a scheme to defraud. The factual allegations relating to the state law claims corresponding to the alleged acts of mail

fraud at most state a claim for constructive fraud, which does not suffice under the mail and wire fraud statutes. *United States v. Lichota,* 351 F.2d 81 (6th Cir. 1965). Rather, specific intent to defraud is an element, even where a fiduciary is charged with the offense of mail fraud, although, unlike common law actual fraud, it is not necessary that false representations be made to the victim upon which the victim relied. *Beck v. Manufacturers Hanover Trust Co.,* 650 F.Supp. 48 (S.D.N.Y.1986). While under Rule 9(b), intent and knowledge may be averred in general terms, the sole allegations of intent in the complaint, found in paragraph 291, fail to distinguish between the various defendants and transactions. Plaintiffs' allegations are so vague and conclusory as to give Bolon, Hart no notice of the nature of mail and wire fraud acts for which plaintiffs seek to hold it responsible.

■ Bolon, Hart further asserts that plaintiffs have failed to state a claim for RICO violations. Bolon, Hart asserts that plaintiffs have failed to allege the existence of a RICO enterprise under 18 U.S.C. § 1961(4). To establish the existence of an association-in-fact enterprise, plaintiffs must allege sufficient facts to allow the court to infer that such an unlawful organization actually existed. *See United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981). Plaintiffs must advance factual allegations from which it may be inferred that the defendant did belong to the association, the length of time the association lasted, and each defendant's specific role in the operation or management of the enterprise. *Plount v. American Home Assur. Co.,* 668 F.Supp. 204, 206 (S.D.N.Y.1987).

In paragraph 9 of the complaint, plaintiffs allege that "all the wrongful acts of the Galbreath defendants and their various advisors, including Bricker & Eckler, Bolon, Hart and Buehler, Inc. and Dolorees Dutoit, as hereinafter alleged, were committed in furtherance of and pursuant to a conspiracy." The allegations in this paragraph are so vague and general that they do not give Bolon, Hart fair notice of the

nature of the claims against it. The allegations cover an indefinite time span of several years and a multiplicity of transactions alleged throughout the complaint. Plaintiffs have failed to specifically allege the time frame of Bolon, Hart's alleged participation in an enterprise, the specific transactions in which Bolon, Hart is alleged to have acted improperly and the precise nature of the claimed impropriety. Bolon, Hart's motion to dismiss on the ground of failure to adequately allege Bolon, Hart's participation in an enterprise is well taken.

 The court also agrees with Bolon, Hart's argument that plaintiffs have failed to plead facts from which it can be inferred that Bolon, Hart participated in or agreed to participate in the affairs of a RICO enterprise through a pattern of racketeering activity. The mere allegation that a defendant performed routine services for an enterprise which are unrelated to the actual commission of predicate acts does not state a claim under RICO. *United States v. Cauble*, 706 F.2d 1322 (5th Cir. 1983). Plaintiffs have failed to allege how Bolon, Hart was involved in or agreed to the commission of any of the predicate wrongful acts alleged to have been committed by other defendants. They have not sufficiently alleged that Bolon, Hart agreed to participate in the affairs of an enterprise and agreed to the commission of at least two predicate acts, so as to allege liability under 18 U.S.C. § 1962(d). *United States v. Joseph*, 835 F.2d 1149 (6th Cir. 1987). Plaintiffs have not alleged facts that would establish that Bolon, Hart had the deliberate, knowing and specific intent to join the conspiracy, *United States v. Elliott*, 571 F.2d 880 (5th Cir.1978), or that Bolon, Hart had agreed with other defendants to inflict the alleged wrong, *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889 (N.D.Ill.1987).

The court therefore grants Bolon, Hart's motion to dismiss the RICO claims asserted against it.

## BRICKER DEFENDANTS' MOTION TO DISMISS

The law firm of Bricker & Eckler and certain partners in that firm are named in various claims in the complaint. Claims twenty-five through thirty-one allege breach of fiduciary duty, fraud, breach of contract, and malpractice in connection with the conveyance of Mrs. Galbreath's property in Saratoga, New York. Claims sixty through sixty-four allege breach of fiduciary duty, malpractice, breach of contract, fraud and tortious interference with expectancy in connection with the preparation of Mrs. Galbreath's will and estate plan, transfers of Mrs. Galbreath's property, the preparation of gift and estate tax returns and the preparation of an allegedly invalid power of attorney. Claim seventy-four alleges RICO claims.

 The Bricker defendants have moved to dismiss certain claims against them. They first assert that they are immune from suit for malpractice or negligence brought by third parties not in privity with their clients, and that therefore the thirtieth and sixty-first claims should be dismissed. The thirtieth claim alleges malpractice in connection with the preparation of the Saratoga deed, and alleges involvement by John Eckler and Charles Waterman in the preparation of the deed. The sixty-first claim alleges malpractice in the planning of Mrs. Galbreath's estate, the drafting of a power of attorney and the preparation of tax returns. The factual allegations relevant to this claim assert that David Cummins was involved in the preparation of the will and tax returns.

Defendants rely on *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (1987), wherein the Ohio Supreme Court stated:

> It is by now well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice.

Plaintiffs note the case of *Elam v. Hyatt Legal Services*, 44 Ohio St.3d 175, 541 N.E.2d 616 (1989) where the court held that an attorney representing the executor of

an estate could be sued in negligence for improperly preparing a certificate of transfer which wrongfully granted a fee simple instead of a life estate to a beneficiary under the will. The court in *Elam* concluded that privity existed between the plaintiffs and the executor because plaintiffs' interest in the estate had vested. Unlike the present case, *Elam* involved post-mortem services by the attorney to the executor. Therefore, *Elam* does not control the present claims.

 Based upon the facts alleged in the complaint, the court concludes that no privity existed between plaintiffs or the Family Trust and Mrs. Galbreath at the time of the alleged negligence on the part of the Bricker defendants. Therefore, the *Zipperstein* immunity rule would apply to the claims asserted on behalf of plaintiffs and the Family Trust. An exception to the *Zipperstein* rule arises as to claims based on "fraud, bad faith, collusion or other malicious conduct which would justify departure from the general rule." *Zipperstein*, 32 Ohio St.3d at 76–77, 512 N.E.2d 636. However, a reasonable interpretation of this exception leads to the conclusion that the attorney must act with intent to defraud the third party or must act with malice or bad faith in regard to the third party before that third party would obtain standing to sue under the *Zipperstein* exception. Further, the court feels that the fact that an attorney acts under circumstances resulting in constructive fraud, as opposed to actual fraud, is not sufficient to grant standing under the *Zipperstein* exception.

The court finds that plaintiffs have alleged no special circumstances such as fraud, bad faith, collusion or other malicious conduct, in general or specifically as to them, in connection with these two claims which would warrant invoking the exception to the *Zipperstein* rule. Defendants' motion to dismiss the thirtieth and sixty-first claims insofar as those claims are brought by plaintiffs in their individual capacities and on behalf of the Family Trust is granted. Insofar as these claims

are asserted on behalf of Mrs. Galbreath's estate, the motion is denied.

 Defendants also invoke the *Zipperstein* rule immunity in respect to the other non-fraud claims asserted by plaintiffs. In regard to claim twenty-five, breach of fiduciary duty in relation to the Saratoga deed, the court concludes that plaintiffs have failed to allege malicious conduct sufficient to invoke the exception to the rule of immunity. The court reaches the same conclusion in regard to claim twenty-six, which alleges that defendants Bricker & Eckler, John Eckler and Charles Waterman aided and abetted John Galbreath in breaching a fiduciary duty to his wife, and claim sixty, the breach of fiduciary duty in regard to the estate planning, will preparation and tax return preparation activities on the part of Bricker & Eckler and David Cummins. Further, claims twenty-five, twenty-six and sixty allege an injury to Dorothy Galbreath, not to plaintiffs, since the fiduciary duty was allegedly owed to Dorothy Galbreath. Insofar as plaintiffs seek to pursue those claims in their own behalf and on behalf of the Family Trust, they are dismissed. Those claims remain on behalf of the estate.

 Claim thirty-one relates to an alleged breach of fiduciary duty on the part of Bricker & Eckler, John Eckler and Charles Waterman to the Family Trust and its beneficiaries in regard to the Saratoga deed. In regard to this claim, plaintiffs assert that Bricker & Eckler served as counsel for the Family Trust and for Daniel Galbreath in his capacity as trustee. However, plaintiffs do not allege that Bricker & Eckler provided any legal advice or services to the beneficiaries of the Trust, or to the trustee, in connection with the Saratoga deed. Further, the fact that Bricker & Eckler provided legal services to the trustee in some matters does not place the beneficiaries in privity with the trustee for purposes of a malpractice-related action against counsel. *See In re Estate of Newhoff*, 107 Misc.2d 589, 435 N.Y.S.2d 632 (Sur.Ct.1980). This claim insofar as it is brought by plaintiffs individually is barred by the *Zipperstein* rule.

■ Claims twenty-nine and sixty-two allege a breach of express or implied contract to provide professional and legal services to Dorothy Galbreath in regard to the Saratoga deed, estate planning and tax return preparation. The court concludes that plaintiffs have not alleged malicious conduct in connection with those claims so as to avoid the immunity rule. Further, these claims allege that defendants breached a contract with Dorothy Galbreath. Plaintiffs allege no facts to show that they or the Family Trust were in privity with Dorothy Galbreath in regard to those alleged contracts so as to give them standing to sue for breach of contract in their own behalf. Therefore, claims twenty-nine and sixty-two do not state a claim for relief insofar as plaintiffs seek to pursue those claims in their individual capacities or on behalf of the Family Trust, and defendants' motion to dismiss in that regard is granted. The motion is denied insofar as those claims have been brought on behalf of the estate.

■ Defendants also move to dismiss claim sixty-four, tortious interference with expectancy. As discussed previously in regard to Bolon, Hart's motion to dismiss, the court has concluded that Ohio does not recognize a cause of action for tortious interference with expectancy, and defendants' motion to dismiss this claim is granted.

The Bricker defendants next move to dismiss plaintiffs' claims of fraud alleged in claims twenty-seven and sixty-three, as well as the claim of aiding and abetting fraud alleged in claim twenty-eight on the basis that these claims do not allege fraud with particularity as required by Fed.R. Civ.P. 9(b).

■ Plaintiffs allege in claim twenty-seven that Bricker & Eckler and John Eckler committed fraud upon Dorothy Galbreath by supervising and permitting the execution of the Saratoga deed at a time when she was incapable of giving her consent. Plaintiffs allege in claim twenty-eight that Bricker & Eckler, John Eckler and Charles Waterman aided and abetted John Galbreath in committing a fraud on

Mrs. Galbreath in connection with the Saratoga deed. These claims do not allege actual fraud under Ohio law. However, those claims are sufficient to allege a constructive fraud committed upon Mrs. Galbreath. These claims do not allege a fraud committed upon plaintiffs personally or upon the Family Trust, and do not state a claim on behalf of plaintiffs or the Family Trust. Therefore, defendants' motion to dismiss claims twenty-seven and twenty-eight insofar as they are asserted on behalf of the plaintiffs and the Family Trust is granted. Insofar as these claims seek recovery on behalf of the estate, the court finds that they are sufficient to allege constructive fraud.

■ Defendants argue that the tort of "aiding and abetting" is not recognized under Ohio law, and that accordingly claim twenty-eight should be dismissed. While defendants are correct in noting that the concept of aiding and abetting is one confined to the area of criminal law, Ohio does recognize the liability of joint tortfeasors. As to fraud claims, the Ohio Supreme Court has held that relief on the ground of fraud can only be had against those who are parties to the fraud, not against a stranger to the fraud. *Piatt v. St. Clair's Heirs*, 6 Ohio 227 (1833). A party may not be held liable for fraudulent acts in which he does not participate, or for false representations which were neither induced by him nor made with his knowledge. *Klein v. Equitable Life Assurance Soc.*, 17 Ohio App.3d 50, 477 N.E.2d 1190 (1984). However, where the fraud was committed either by the party, or by his procurement or authority, he may be held liable. *Id.*, 477 N.E.2d at 1193. Likewise, parties who knowingly participate in a transaction tainted with fraud or deceit, who are under a duty to disclose their knowledge and fail to do so, may be held liable for damages proximately resulting from their silence. *Miles v. McSwegin*, 58 Ohio St.2d 97, 388 N.E.2d 1367 (1979). The twenty-eighth claim alleges that John Eckler and Charles Waterman performed acts which assisted John Galbreath in committing a fraud upon Mrs. Galbreath in connection with the

transfer of the Saratoga property, and that they did so with knowledge that they were aiding in the commission of fraud. These allegations are sufficient to allege that the Bricker defendants participated in the alleged constructive fraud. Defendants' motion to dismiss claims twenty-seven and twenty-eight insofar as they are brought on behalf of the estate is denied.

In claim sixty-three, plaintiffs allege that Bricker & Eckler made representations to Mrs. Galbreath regarding the execution of her will and made recommendations with respect to her estate plan, the execution of "any other documents they may have prepared or approved which affected or facilitated transfers of her property," and the authorization, approval or ratification of "any other transfer of her property with which they may have been involved or of which they may have been aware." Plaintiffs basically seek to assert fraud in two respects: fraud in the preparation of Mrs. Galbreath's estate plan, and fraud in the conveyance of Mrs. Galbreath's property.

This claim is deficient in several respects. The claim contains conflicting and confusing allegations which fail to inform the defendants of the legal basis upon which it is founded. The claim contains no allegations of fraudulent acts being committed against plaintiffs or the Family Trust. The portion of the claim addressing defendants' role in the planning of the estate does not describe the nature or time of the alleged representations, nor does it specify how Mrs. Galbreath or her estate suffered damages as a result of the manner in which her will was drafted. The part of the claim addressing the conveyance of property does not describe the particular transactions involved or the nature of the Bricker defendants' involvement in those transactions. This claim does not satisfy the requirements of Rule 9(b), and defendants' motion to dismiss claim sixty-three in its entirety is granted.

Defendants next move to dismiss the claims against John Phillips. This defendant is identified in paragraph twenty-one of the complaint as being a grandson of John Galbreath as well as a partner of the Bricker & Eckler firm. His name appears again in paragraph 176 of the complaint. However, he is not named as a defendant in any of the claims for relief which follow that paragraph. There are no specific allegations that John Phillips personally engaged in any tortious act or omission. Based upon the allegations in the complaint, this defendant's only potential liability would be partnership liability arising out of his status as a partner in the Bricker & Eckler firm. Therefore, to the extent that the plaintiffs purport to assert any claims based on individual liability against him, such claims are not adequately pleaded and they are dismissed.

The Bricker defendants also move to dismiss the RICO claims against them. Defendants argue that the predicate acts which form the basis of plaintiffs' RICO claims are not pleaded with sufficient particularity. Under 18 U.S.C. § 1961(5), at least two predicate acts of racketeering activity are required to satisfy the "pattern of racketeering activity" element of RICO, although two acts may not, in some situations, be sufficient to satisfy RICO's continuity requirement. *Sedima*, 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14.

Plaintiffs have alleged acts of mail and wire fraud as predicate acts. These allegations must satisfy Rule 9(b)'s requirement that averments of fraud be made with particularity. *Blount Financial Services, Inc. v. Walter E. Heller & Co.*, 819 F.2d 151 (6th Cir.1987). Fraud alleged in a RICO complaint for mail fraud must state with particularity the false statement of fact made by the defendant upon which the plaintiff relied and facts showing plaintiff's reliance on defendant's false statement of fact. *Id.* at 152. There must be allegations of misrepresentations or omissions which were "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 153. A plaintiff must also allege the time, place and contents of the misrepresentations upon which he relied, and must further allege that defendant acted with intent to defraud.

*Bender v. Southland Corp.,* 749 F.2d 1205 (6th Cir.1984).

The predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 allegedly committed by Bricker & Eckler are set forth in paragraph 294, subparagraphs (b), (g), (k), (*l*), and (m). Only in subparagraphs (b) and (1) is the transaction in question identified with any specificity. Plaintiffs have not alleged how the mailing in those transactions furthered a scheme to defraud. The factual allegations relating to those transactions in other parts of the complaint allege at most constructive fraud. Plaintiffs have not sufficiently pleaded facts indicating the nature of the Bricker defendants' intentional participation in a scheme to defraud to adequately notify the defendants of the claims against them. The court concludes that the acts and representations constituting the fraud are not alleged with sufficient particularity, as required by Rule 9(b).

 Plaintiffs also allege in paragraph 296(c) that Bricker & Eckler was involved in the interstate transportation and/or receipt of stolen property in violation of 18 U.S.C. §§ 2314 and 2315. The offense of interstate transportation of stolen property requires proof that the property in question was transported in interstate commerce with fraudulent intent and with the knowledge that the property had been stolen, converted or taken by fraud. The property referred to in that paragraph is the Saratoga deed, which was allegedly delivered "from Ohio to New York by John Galbreath, Daniel Galbreath, Bricker & Eckler and Dolorees Dutoit." These allegations do not describe the exact nature of Bricker & Eckler's involvement in this alleged offense. In addition, there is an issue as to whether the deed falls within a class of property subject to the provisions of § 2314. The court is aware of only one case in which a deed was found to be a security within the meaning of 18 U.S.C. § 2311, therefore falling within a category of property subject to the provisions of § 2314, specifically, *United States v. Speidel,* 562 F.2d 1129 (8th Cir.1977). However, as noted in *United States v. Dunlap,*

573 F.2d 1092 (9th Cir.1978), this expansive interpretation of a criminal statute is potentially in conflict with the more traditional definition of the term "security" employed by another circuit in *United States v. Canton,* 470 F.2d 861 (2d Cir.1972). However, even assuming, without deciding that issue, that plaintiffs have adequately pleaded a violation of § 2314 or § 2315, this would constitute only one predicate act.

Plaintiffs have failed to adequately plead a sufficient number of predicate acts so as to allege that the Bricker defendants engaged in a pattern of racketeering activity, an essential element of a RICO claim. Therefore, the Bricker defendants' motion to dismiss the RICO claims is well taken.

The Bricker defendants also raise the issue of standing in regard to the RICO claims. The Court concludes, as it did with respect to the RICO claims asserted against Bolen, Hart, that the RICO claims asserted against the Bricker defendants arise out of injuries to Mrs. Galbreath and her estate and that the plaintiffs have no standing to assert RICO claims on behalf of themselves or the Family Trust.

## MOTION TO DISMISS—GALBREATH DEFENDANTS

The Galbreath defendants have moved to dismiss plaintiffs' claims for tortious interference with expectancy (claims 12, 24, 38, 45, 54 and 59). In accordance with the court's previous discussion on this point, this motion is granted. Defendants also move to dismiss the RICO claims asserted by plaintiffs individually and on behalf of the Family Trust on the basis that plaintiffs lack standing to assert RICO claims on their own behalf and on behalf of the Family Trust due to the failure to plead a direct injury. For the reasons discussed previously, plaintiffs have no standing to assert RICO claims on behalf of themselves or the Family Trust, and defendants' motion to dismiss those claims is granted.

 The Galbreath defendants have also moved to dismiss the RICO claims asserted against them. Defendants first assert that plaintiffs' claims fail to allege a

violation of 18 U.S.C. § 1962(a) and (b), in that plaintiffs have failed to allege a causal relationship between the RICO violation and plaintiffs' claimed injury. Section 1962(a) prohibits the use or investment of income or proceeds of income derived from a pattern of racketeering activity to invest in, to acquire an interest in, or to establish or operate an enterprise. A claim under § 1962(a) requires allegations of an injury "by reason of" the RICO defendants' use of income or proceeds obtained from racketeering activity to invest in, acquire or operate an enterprise. *Cincinnati Gas and Electric Co. v. General Electric Co.,* 656 F.Supp. 49, 83 (S.D.Ohio 1986).

Plaintiffs argue that they have sufficiently alleged such injury by reason of the allegations that the Galbreath defendants used the proceeds of the alleged fraudulent acts in perpetuating the Darby Dan Farm enterprise and the Galbreath businesses enterprise. However, a review of plaintiffs' allegations reveals only that defendants received the proceeds of the alleged fraudulent acts. The plaintiffs allege injury resulting from the fraudulent acts, not from any subsequent use or investment of the proceeds from the frauds. Section 1962(a) provides a cause of action only for injuries arising from the actual use or investment of racketeering income, not for injuries arising from the underlying racketeering activity. *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1288 (S.D.N.Y.1988). The use of Mrs. Galbreath's money to continue the operation of the enterprises, in itself, would not constitute a violation of § 1962(a). Rather, a violation under § 1962(a) would be pleaded only if the commission of the predicate acts was made possible through the operation of an enterprise financed by the investment of funds gained through a pattern of racketeering activity. *See Newmyer v. Philatelic Leasing, Ltd.,* 888 F.2d 385 (6th Cir.1989). Plaintiffs have alleged no injury under § 1962(a), and defendants' motion to dismiss those claims is granted.

■ Section 1962(b) prohibits the acquisition or maintenance of an interest in, or control over, an enterprise through a pattern of racketeering. That section requires a showing of a relationship or nexus between the pattern of racketeering activity and the interest or control obtained. *Cincinnati Gas & Electric Co.,* 656 F.Supp. at 85. Plaintiffs fail to allege facts demonstrating such a nexus. In addition, § 1962(b) requires a causal connection between the defendants' interest or control and plaintiffs' injury. *Id.* Plaintiffs have not pleaded facts which would show that Mrs. Galbreath or her estate was injured as the result of defendants' acquisition or maintenance of an interest in or control over any of the three alleged enterprises through a pattern of racketeering.

The court concludes that plaintiffs have failed to state claims under § 1962(b) and defendants' motion to dismiss those claims is granted.

■ The Galbreath defendants have also moved to dismiss the claims against them under 18 U.S.C. § 1962(c). The elements of a cause of action under § 1962(c), as set forth in *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285, are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

The Galbreath defendants allege that plaintiffs have failed to adequately plead the existence of an enterprise. The definition of "enterprise" is found in 18 U.S.C. § 1961(4), and includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

In *United States v. Kragness,* 830 F.2d 842, 855 (8th Cir.1987), the court identified three characteristics required for a RICO enterprise, as follows:

First, there must be a common or shared purpose that animates the individuals associated with it. Second, it must be an "ongoing organization" whose members "function as a continuing unit," [*United States v. Turkette,* 452 U.S. 576, 583 [101 S.Ct. 2524, 2528, 69 L.Ed.2d 246] (1981)] in other words, there must be some continuity of structure and personnel. Third, there must be an ascertainable structure distinct from that inherent in the conduct

of a pattern of racketeering activity.... Proof of all three of these characteristics is necessary in order to avoid the danger of guilt by association that arises because RICO does not require a proof of a single agreement as in a conspiracy case, and in order to ensure that criminal enterprises, which are RICO's target, are distinguished from individuals who associate for the commission of sporadic crime.

Plaintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423 (5th Cir. 1987).

Plaintiffs have alleged the existence of three enterprises allegedly associated in fact. The first of these alleged enterprises is referred to as the "Galbreath interests," a group of individuals and businesses which includes John Galbreath and his estate; Daniel Galbreath; Joan Phillips; James Phillips; Galbreath & Co.; Galbreath–Ruffin; Akron Redevelopment; Bricker & Eckler; Bolon, Hart; and Dolorees Dutoit. The second alleged enterprise, referred to as the "Darby Dan Farm enterprise," includes John Galbreath and his estate, Daniel Galbreath, Joan Phillips, James Phillips and Dolorees Dutoit as its alleged members. The third enterprise, referred to as the "Galbreath businesses enterprise," allegedly includes John Galbreath and his estate, Daniel Galbreath, Galbreath & Co., Galbreath–Ruffin, Akron Redevelopment, and Dolorees Dutoit.

Plaintiffs have alleged the common or shared purpose of the alleged enterprises, albeit in very general terms. Plaintiffs contend in paragraphs 9 and 291 of the complaint that the purpose of the defendants was to obtain property from Mrs. Galbreath for their own benefit, thereby diverting those assets away from her estate and the Family Trust and its beneficiaries.

However, plaintiffs are also required to allege sufficient facts to demonstrate the requisite continuity of structure and personnel in the alleged enterprises. Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis. *Kragness*, 830 F.2d at 856. While the membership of the enterprise may change over time, each member must continue to have the same purpose. *United States v. Bledsoe*, 674 F.2d 647 (8th Cir.1982). Plaintiffs have not alleged sufficient facts to indicate that the alleged members of the above groups did in fact belong to an "association," *Plount v. American Home Assurance Co., Inc.*, 668 F.Supp. 204 (S.D.N.Y.1987), or that a membership structure exists which "permeates every predicate act and transaction." *Marriott Brothers v. Gage*, 704 F.Supp. 731, 742 (N.D.Tex.1988). Plaintiffs have not pleaded facts showing that "the associational ties of those charged with a RICO violation amount to an organizational pattern or system of authority." *United States v. Lemm*, 680 F.2d 1193, 1199 (8th Cir.1982).

Finally, an enterprise must have an ascertainable structure distinct from the pattern of racketeering activity, and if nothing joins the association members except the commission of the predicate acts, there is no enterprise. *Manax v. McNamara*, 842 F.2d 808 (5th Cir.1988); *Gage*, 704 F.Supp. at 742. Plaintiffs have failed to allege facts which demonstrate that the enterprises "had an on-going structure, and that its members were not simply engaged in sporadic, ad hoc criminal activity." *Kragness*, 830 F.2d at 857.

The court finds that plaintiffs have not alleged sufficient facts to plead the existence of an enterprise under § 1962(c), and defendants' motion to dismiss that claim is granted.

■■■ The Galbreath defendants have also moved to dismiss the RICO claims based on conspiracy under 18 U.S.C. § 1962(d). That section provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

In order to prove a RICO conspiracy under § 1962(c), plaintiffs must allege: 1) the existence of an enterprise which affects

interstate or foreign commerce; 2) that the defendant associated with the enterprise; 3) that the defendant participated in the conduct of the enterprise's affairs; 4) that the participation was through a pattern of racketeering activity; and 5) the existence of an illicit agreement to violate the provisions of § 1962(a), (b) or (c). *United States v. Sinito,* 723 F.2d 1250 (6th Cir.1983). The gravamen of a conspiracy charge is the agreement to participate, directly and indirectly, in the affairs of the enterprise by committing two or more predicate acts. *United States v. Joseph,* 835 F.2d 1149 (6th Cir.1987); *United States v. Elliott,* 571 F.2d 880 (5th Cir.1978) Plaintiffs are not required to describe the conspiracy and its formation in great detail, but must describe the general composition of the conspiracy, its broad objectives, and defendant's general role in that conspiracy. *Alfaro v. E.F. Hutton & Company, Inc.,* 606 F.Supp. 1100 (E.D.Pa.1985).

Plaintiffs have alleged in general terms in paragraph nine of the complaint that the wrongful acts alleged in the complaint "were committed in furtherance of and pursuant to a conspiracy." However, plaintiffs have failed to allege facts indicating the existence of a conspiracy to violate § 1962(a) and (b). Plaintiffs have also failed to sufficiently plead the existence of an enterprise or the agreement of each defendant to participate in the affairs of an enterprise through a pattern of racketeering activity so as to support a claim of conspiracy under § 1962(c). Thus, plaintiffs' claims under § 1962(d) are dismissed.

The Galbreath defendants have also moved to dismiss the RICO claims on the basis that the fraud-based predicate acts are not pleaded with sufficient particularity under Rule 9(b). Defendants first challenge the sufficiency of plaintiffs' allegations in relation to the common-law fraud claims. Plaintiffs assert fraud claims relating to transactions which occurred both before and after the onset of Mrs. Galbreath's mental incompetency.

■ In the fifty-seventh claim, plaintiffs allege in general terms that with respect to transactions involving Mrs. Galbreath's funds which occurred prior to her incompetency, John and Daniel Galbreath did not inform her that the transactions were not in her best interest and concealed from her the consequences of the transactions, and that she relied on these omissions to her detriment. In the seventy-second claim, plaintiffs assert fraud on the part of Dolorees Dutoit in connection with unidentified financial transactions which occurred before the onset of Mrs. Galbreath's incompetency. These allegations are insufficient under Rule 9(b). They do not specify the time, place, speaker or content of the alleged misrepresentations or omissions. The subject matter of the transactions, which allegedly occurred over a twenty-three year period, is not identified, with the exception of the purchase of notes receivable in Cincinnati Redevelopment, the transfer of Churchill Downs stock and the purchase and sale of debentures in the company which controlled Hialeah Racetrack in Miami, Florida. While defendants' motion is somewhat ambiguous as to whether defendants are also moving to dismiss the common-law fraud claims on the basis of failure to comply with Rule 9(b), the court will so construe their motion, and claims fifty-seven and seventy-two are hereby dismissed.

■ Plaintiffs also assert common-law fraud claims involving transfers of property which occurred after Mrs. Galbreath's alleged incompetency. Claim four alleges fraud in connection with the transfer of the River House apartment in New York City. Claim thirteen seeks damages for fraud in connection with the transfer of the Saratoga, New York property. In claim thirty-four, plaintiffs allege fraud in connection with allegedly invalid gifts to Galbreath family members and to charitable organizations. Paragraphs 154 and 155 describe specific gifts, while the remaining paragraphs relating to claim thirty-four are nonspecific in nature. In claim forty-one, plaintiffs allege fraud in connection with the transfer of various interests in racing horses and breeding rights. Only the interest in Proud Truth is specifically identified. Claim forty-seven alleges fraud in the

transfer of Mrs. Galbreath's dower rights in certain unidentified real property located in Columbus, Ohio. In claim fifty-two, plaintiffs allege fraud in connection with investments made in various business entities, including corporations owned by Galbreath family members, using Mrs. Galbreath's funds. With the exception of four transactions set forth in paragraph 210, the alleged expenditures are not specifically identified. Claim seventy-two alleges fraud on the part of Dolorees Dutoit in respect to unidentified post-incompetency transactions.

The court concludes that the above claims do not contain allegations sufficient to plead actual fraud under Ohio law. At most, plaintiffs have alleged constructive fraud in relation to Dorothy Galbreath and her estate. These claims fail to allege the commission of fraud on plaintiffs or the Family Trust, and, again construing defendants' motion to dismiss as encompassing these fraud claims, they are dismissed insofar as they are brought on behalf of plaintiffs individually and on behalf of the Family Trust. Plaintiffs have alleged sufficient facts to plead constructive fraud in claims four, thirteen, thirty-four, forty-one, forty-seven and fifty-two to the extent that the transactions in question are specifically identified, and defendants' motion to dismiss those claims asserted on behalf of the estate with that limitation is denied. Claim seventy-two identifies no specific transactions, and it is dismissed in its entirety. However, the fact that sufficient facts have been pleaded to assert constructive fraud does not mean that sufficient allegations have been made to assert the predicate offenses which form the basis of the RICO claims. *United States v. Lichota, supra.*

Plaintiffs have also alleged that the defendants committed various predicate acts of mail and wire fraud, interstate transportation of stolen property, and money laundering. However, these allegations do not comply with Rule 9(b). Among the alleged offenses, only the transactions in paragraphs 294(b) and (i) and paragraphs 296(a), (b) and (c) are identified in any detail. As noted previously in relation to the

other defendants' motion on this point, the factual allegations relating to those transactions are sufficient to plead, at most, constructive fraud. Plaintiffs have not sufficiently alleged the nature of each defendant's participation in the predicate acts or the specific intent of each defendant to defraud so as to adequately notify the defendants of the nature of the claims against them as required by Rule 9(b). Defendants' motion to dismiss the RICO claims for failure to adequately plead the predicate acts is granted.

## CONSTITUTIONALITY OF THE RICO PATTERN REQUIREMENT

■ The Bricker and Galbreath defendants have moved to dismiss the claims brought against them under RICO on the basis that the term "pattern" as defined in 18 U.S.C. § 1961(5) and as employed in 18 U.S.C. § 1962 is unconstitutionally vague. Defendants note the comments of Justice Scalia on that subject in his concurring opinion, joined in by three other Justices, in *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), a case decided six months after the complaint in the present action was filed. In his cogent opinion, Justice Scalia discussed the Court's prior efforts in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)· to construe the phrase "pattern of racketeering activity," as well as the Court's subsequent interpretations in *H.J. Inc.,* and expressed his concern that the Court's guidance has done little to clarify the meaning of the term. While noting that no constitutional challenge was posed in *H.J. Inc.,* Justice Scalia concluded that the fact that "the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented." *H.J. Inc.,* 109 S.Ct. at 2909.

Since the decision in *H.J. Inc.,* several courts have been invited to declare the "pattern" element unconstitutionally vague, including the First Circuit Court of Appeals in *United States v. Angiulo,* 897

F.2d 1169 (1st Cir.1990). *See also, Minpeco, S.A. v. Hunt*, 724 F.Supp. 259 (S.D.N.Y. 1989) (challenge summarily rejected); *United States v. Robinson*, 89 CR 907, 1990 WL 77780, 1990 U.S.Dist. LEXIS 6182 (N.D.Ill.1990). The courts in *Angiulo* and *Robinson* found that the statute was not unconstitutionally vague as applied to the particular defendants before them. The court in *Angiulo* noted, 897 F.2d at 1179–1180, that the case involved the illegal activities of an organized crime family which Congress clearly intended to include within the concept of "pattern of racketeering activity" under RICO.

A statute is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). Vagueness challenges must be examined in light of the particular facts of the case. *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). An individual has standing to challenge a provision on vagueness grounds only if it is vague as applied to that person. *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988). Therefore, as the First Circuit noted in *Angiulo,* 897 F.2d at 1179, in regard to the "pattern" element:

> Thus, for defendants' vagueness challenge to succeed, they must demonstrate that the meaning and scope of RICO's "pattern" element was unclear and vague as to *their* conduct at issue *here.* Phrased another way, they must show that persons of ordinary intelligence in their situation would not have had adequate notice that the gambling, loansharking and conspiracy offenses at issue here constituted a "pattern of racketeering activity" under RICO.

Defendants here argue that the statute is vague on its face and as applied to them.

In *Sedima,* the Supreme Court discussed the meaning of the term "pattern of racketeering activity." The Court stated that while at least two acts of racketeering were required under § 1961(5), two isolated acts of racketeering activity, sporadic activity, or two acts of racketeering activity, without more, would not be enough to constitute a pattern. *Sedima,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14. Rather, the term "pattern" requires a showing of continuity plus relationship. *Id.*

Last year, the Supreme Court issued its decision in *H.J. Inc.,* in which the Court expanded upon the continuity plus relationship standard. The Court acknowledged that defining "pattern" has not proven to be an easy task and that the exact scope of the meaning of "continuity plus relationship" cannot be fixed in advance with precise clarity. *H.J. Inc.,* 109 S.Ct. at 2899, 2902. The Court stated that "to prove a pattern of racketeering activity, a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.,* 109 S.Ct. at 2900. The relationship requirement is satisfied if the criminal acts " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.,* 109 S.Ct. at 2901 [quoting 18 U.S.C. § 3575(e) ]. Continuity may be established by proving a series of related predicates extending over a substantial period of time, or by proving a threat of continued racketeering activity due to, for example, the nature of the predicate acts themselves, or by showing that the predicate acts are a part of an ongoing entity's regular way of doing business. *Id.,* 109 S.Ct. at 2902.

Justice Scalia expressed the view in his concurring opinion in *H.J. Inc.* that the decisions of the Court have provided little guidance as to the meaning of the "pattern" requirement, and have made it more rather than less difficult for a potential defendant to know whether his conduct is covered by RICO. Justice Scalia further noted the "kaleidoscope of circuit positions" which followed the Court's opinion in *Sedima,* and stated that "[t]here is no reason to believe that the Courts of Appeals will be any more unified in the future, than they have in the past, regarding the con-

tent of this law." *H.J. Inc.*, 109 S.Ct. at 2908.

Against this backdrop, this court must decide whether the "pattern" requirement is unconstitutionally vague as applied to the Bricker and Galbreath defendants. Unlike the organized crime scenario before the First Circuit in *Angiulo*, the circumstances of the instant case, which involves a dispute between family members concerning whether certain property should have remained in a relative's estate, are in all likelihood far removed from the typical situations which Congress envisioned as being within RICO's scope of coverage. This is also not a case where, assuming the allegations in the complaint were proved, it could be said that the pattern requirement had clearly been satisfied regardless of the narrowness of the interpretation placed upon the term "pattern." Rather, the alleged predicate acts, particularly when divided among the three enterprises to which they are variously attributed, are isolated and sporadic.

Upon review of the complaint, this court concludes that persons of ordinary intelligence in defendant's situation would not have had adequate notice that the mail and wire fraud, interstate transportation of stolen property and money laundering offenses constituted a "pattern of racketeering activity" under RICO. The court finds that the "pattern" requirement is unconstitutionally vague as applied to these defendants. This court is also persuaded to agree with Justice Scalia's suggestion that the "pattern" requirement is unconstitutionally vague as written. Defendants' motion to dismiss the RICO claims is granted.

## CONCLUSION

In accordance with the foregoing, defendants' motions to dismiss are granted in part and denied in part. All claims brought on behalf of the estate and the Family Trust are dismissed without prejudice, unless dismissal with prejudice is indicated below. All claims of tortious interference with expectancy are dismissed with prejudice.

Claims 56, 57, 58, 65, 66 and 68, asserted against Bolon, Hart, are dismissed with prejudice insofar as they are asserted on behalf of plaintiffs and the Family Trust. Claim 67 is dismissed in its entirety with prejudice. The RICO claims against Bolon, Hart asserted by plaintiffs individually and on behalf of the Family Trust are dismissed with prejudice. The RICO claims brought on behalf of the estate are dismissed without prejudice.

In regard to the Bricker defendants, claim 31 as asserted by plaintiffs individually is dismissed with prejudice. Claims 25, 26, 27, 28, 29, 30, 60, 61, 62 and 63 as brought by plaintiffs individually and on behalf of the Family Trust are dismissed with prejudice. The RICO claims brought on behalf of plaintiffs individually and the Family Trust are dismissed with prejudice. The RICO claims brought on behalf of the estate are dismissed with prejudice, except that if it is later determined that the RICO statute is constitutional, the dismissal of those claims would then be without prejudice. John Phillips is dismissed as a party in his individual capacity.

In regard to the Galbreath defendants, the RICO claims brought on behalf of plaintiffs individually and on behalf of the Family Trust are dismissed with prejudice. The RICO claims brought on behalf of the estate are dismissed with prejudice, except that if it is later determined that the RICO statute is constitutional, then the dismissal will be without prejudice. The fraud claims, insofar as they are asserted on behalf of plaintiffs individually or the Family Trust are dismissed with prejudice. The fraud claims asserted on behalf of the estate are dismissed without prejudice.

In the event that plaintiffs desire to move to amend their complaint, such a motion shall be filed within thirty (30) days of the date of this order.

It is so ORDERED.