KLEIN, D.B.A. KLEIN OPTICAL CENTERS, APPELLANT, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, APPELLEE

(No. C-830562—Decided
May 16, 1984.)

*Goodman & Goodman* and *Stanley Goodman*, for appellant.
*Graydon, Head & Ritchey* and *William H. Anderson*, for appellee.

*Per Curiam.* This cause came on to be heard upon appeal from the Court of Common Pleas of Hamilton County, Ohio.

Plaintiff-appellant, Robert Klein, presently leases storeroom space in the Kenwood Mall from its current owner, defendant-appellee Equitable Life Assurance Society of the United States. Klein's complaint against Equitable Life contains two causes of action for which he claims to be entitled to relief: (1) Equitable Life is liable for breaching its lease agreement with Klein, and (2) Equitable Life is liable in fraud for the false promises made to Klein by Equitable Life's predecessor in interest. Equitable Life moved for summary judgment on Klein's complaint and the court below granted the motion. The sole assignment of error in this appeal presents the issue of whether the court below properly granted the motion for summary judgment.

Carl and Robert Lindner are Equitable Life's predecessors in interest to the Kenwood Mall. The Lindners developed the Kenwood Mall in the mid-1960's and were the original lessors of the storeroom space to Klein. Klein leased the space for the purpose of carrying on an optician-optometrist business. Klein entered into his lease with the Lindners on February 3, 1965, and the term of the lease (by agreement of Klein and the Lindners) commenced on October 1, 1966. Contained in Section 6.01 of the lease are the following provisions relevant to Klein's complaint:

"Lessee will not operate or cause to be operated a discount house or discount business on the Leased Premises. The purposes of this lease, 'discount house' or 'discount business' shall mean a retail establishment which regularly sells the major portion of its merchandise at prices below normal, usual retail prices or advertises or holds itself out to the public as a discount house or as regularly selling at below normal, usual retail prices * * *. During the term of this lease, the Lessor agrees that it shall not lease to any other tenant in the Shopping Center any space for the purpose of carrying on the business of Optician and/or Optometrist; provided, however, that such restrictions shall not apply to the space occupied by the Shillito Department Store."

The Lindners also leased space in the Kenwood Mall to Super X Drugs. The Super X lease was executed on June 19, 1964 and its term commenced on August 1, 1966 — both dates prior to commencement of the term of the lease between the Lindners and Klein. From the beginning of its operations at the Kenwood Mall, Super X carried on what could be termed a discount business. Unlike Klein's lease, Super X's lease does not contain an agreement for Super X to not carry on a discount business at the Kenwood Mall. In the fall of 1979 Super X opened a discount optical department at its Kenwood Mall location. In the first prong of his claim for relief, Klein claims that Equitable Life's allowing Super X to open an optical department constitutes a breach of Section 6.01 of his agreement with lessor.

The Lindners no longer own the Kenwood Mall, and therefore are no longer Klein's lessors. On December 15, 1975, Equitable Life acquired title to the Kenwood Mall and became assignee of the Lindner's interests as lessor of space in the mall. As assignee, Equitable Life entered into the following agreement with the Lindners (the assignors):

"The ASSIGNEE covenants and agrees, in consideration of this assignment, to keep and perform all the conditions, covenants and provisions of said Leases, and to indemnify and save harmless the ASSIGNORS from and against any and all losses and expenses by reason of any default of the ASSIGNEE in respect thereto."

In the second prong of his claim, Klein argues that Equitable Life, by virtue of the above agreement, is liable for the fraud he claims the Lindner's agent, Phillip J. Petricone, committed in inducing Klein to originally enter his lease. Klein, in an affidavit, states that Petricone fraudulently represented to him that: (1) no optician or optometrist was located in the Kenwood Mall at the time of the negotiations that led to the formation of the lease, and that if the lease were executed, no other optician or optometrist would be permitted to locate in the mall except in the space occupied by the Shillito Department Store; and (2) no discount business would be permitted to be operated by any of the other tenants in the Kenwood Mall, and a restrictive covenant similar to the one contained in Section 6.01 of Klein's lease was present in each existing lease and would be required of each future lessee of space within the mall.

Klein's single assignment of error, that the court below incorrectly granted Equitable Life's motion for summary judgment, deals with both the issue of whether Equitable Life is in breach of its lease agreement with Klein and whether Equitable Life can be held liable for the alleged fraud of the agent of its predecessor in interest. Both issues, since disposed of in Equitable Life's favor on its motion for summary judgment, are subject to the standards of Civ. R. 56, *quod vide.*

Initially addressing the breach of lease question, we find the terms of the pertinent lease agreements dispositive. Klein's lease for space in the Kenwood Mall provides that the lessor — the Lindners when the agreement was entered into, Equitable Life now — shall not, *during the term of the lease with Klein,* lease space in the mall to any other tenant for the purpose of carrying on an optician and/or optometrist business, except that such restriction should not apply to the space occupied by Shillito's. Super X entered into its lease for space in the Kenwood Mall *prior* to the commencement of the term of Klein's lease. The Super X lease contains no restrictions with respect to Super X's use of the storeroom space for carrying on an optician-optometrist business. More important to this action, the Klein lease contains no terms warranting that the lessor had required that all *prior* lessees not carry on an optician-optometrist business. Therefore, since Super X is a prior lessee, the lessor is not in breach of its agreement with Klein by having allowed Super X the freedom to open an optician-optometrist department.

Klein, in his argument, attaches much significance to the addition of the clause excepting the space occupied by Shillito's from the operation of the agreement restricting those who can open an optician-optometrist business in the mall. Klein states that since both Shillito's and Super X entered into their leases with the lessor prior to the commencement of the term of Klein's lease, the specific exception of the Shillito space from the operation of the restrictive covenant in the Klein lease means that only the Shillito space was to be exempted from the covenant's operation. We disagree with Klein's interpretation

of the effect of the specific Shillito space exemption on the restrictive covenant.

The language of the restrictive covenant and Shillito space exemption is unambiguous. Klein bases his argument on only one of any number of possible reasons why the Shillito space exemption is added to the restrictive covenant. Since the record before us is devoid of any evidence supporting Klein's interpretation of the exemption over all others which support interpreting the lease agreement in accordance with its plain language, we adhere to the clear and precise terms of Section 6.01 of the Klein lease. Super X did not enter into its lease with the lessor during the term of the Klein lease. Accordingly, the Klein lease did not require the lessor to restrict Super X from using its Kenwood Mall space for an optician-optometrist business.

Klein also claims that Equitable Life is in breach of its lease with him by permitting Super X to carry on a "discount business" at the Kenwood Mall. Klein agrees in his lease, at Section 6.01, that he will not operate a discount business in his storeroom space at the mall. The Klein lease contains no provision in which the lessor agrees to prevent other lessees of Kenwood Mall space from operating discount businesses. Furthermore, nowhere in its Kenwood Mall lease does Super X agree not to operate a discount business. Clearly, Equitable Life has not breached its lease with Klein by permitting Super X to operate a discount business. There is nothing presented in the record before us to demonstrate that Equitable Life is in breach of its lease with Klein. On the breach of lease issue the court below properly granted summary judgment.

Klein's other cause of action against Equitable Life is grounded in fraud. Klein asserts that Equitable Life should be liable for the fraud allegedly committed against him by Equitable Life's assignor's agent (i.e., the Lindners' agent, Phillip Petricone). In support of his assertion, Klein cites the following provision from the assignment agreement between Equitable Life (assignee) and the Lindners (assignors):

"The ASSIGNEE covenants and agrees, in consideration of this assignment, to keep and perform all the conditions, covenants and provisions of said Leases, and to indemnify and save harmless the ASSIGNORS from and against any and all losses and expenses by reason of any default of the ASSIGNEE in respect thereto."

In the above provision Equitable Life does not agree to hold itself liable for any fraud the Lindners or their agents may have committed in connection with the leases assigned to Equitable Life. Instead, Equitable Life merely agrees to indemnify the Lindners for any losses *occasioned by Equitable Life's default* on the leases.

We find the following rationale persuasive in determining whether Equitable Life, as assignee of a lease, can be held liable for the fraud allegedly committed against Klein by its assignors' agent:

"* * * [R]elief on the ground of fraud can be had only against those who are shown to have been parties thereto; * * * [it] cannot be obtained against a stranger to the fraud.

"[O]ne cannot be affected by false representations which are neither induced by him nor made with his knowledge, or be deprived of any rights by fraudulent acts in which he does not participate. To warrant relief in any case, therefore, it must appear that the fraud was committed either by the person sought to be charged, or by his procurement, or with his authority. The mere fact that he may profit by it is not enough if he neither adopts it nor takes any advantage under it." 51 Ohio Jurisprudence 3d (1984) 21-22, Fraud and Deceit, Section 164. Equitable Life can not be held liable for

the alleged fraud. Resultantly, the court below correctly granted summary judgment in Equitable Life's favor on the fraud issue.

Summary judgment having properly been granted on both causes of action, Klein's single assignment of error is overruled and the judgment of the court below is affirmed.

*Judgment affirmed.*

Keefe, P.J., Palmer and Klusmeier, JJ., concur.