FIRST NATIONAL BANK OF FINDLAY, APPELLEE, *v.* FULK, APPELLEE; HARRELL, APPELLANT.

(No. 5-86-33—Decided January 23, 1989.)

*William M. Gibson,* for appellee First National Bank of Findlay.

*William T. Hunt,* for appellee Donald A. Fulk.

*John C. Sausser,* for appellant Maudie Harrell.

EVANS, J. This is an appeal by Maudie Harrell ("Maudie"), defendant-appellant, of a judgment by the Findlay Municipal Court, wherein the court ruled that Maudie Harrell and Donald A. Fulk ("Donald"), defendant-appellee, jointly and severally owed to the First National Bank of Findlay, Ohio ("bank"), plaintiff-appellee, a balance due on a Visa charge card in the amount of $703.75 plus interest and costs.

The pertinent facts are as follows:

On April 5, 1977, a bank employee telephoned the Fulk residence and spoke with Donald's former wife, Reva Fulk. The employee asked Reva if the Fulks would like to have a Visa charge card to which Reva responded that they would. Subsequently, a Visa charge card was issued in the names of Donald H. Fulk and Reva Fulk. Some-

time thereafter, Reva died, and the charge card was reissued in the name of Donald H. Fulk only.

On July 30, 1979, Donald married Maudie Harrell. During the marriage Maudie used Donald's Visa charge card on at least three different occasions. Evidence was produced at trial to show that on March 23, 1981, Maudie's signature appeared on a charge slip to Kar Gard in the amount of $145.48; on December 24, 1981, to Thomas Jeweler in the amount of $103.16; on June 4, 1982, to Bryant's Shoes in the amount of $57.23 and a second purchase in the amount of $16.80. Copies of these charge slips were the evidence introduced at trial which proved that Maudie used Donald's Visa charge card. However, purchases totaling $703.75 were charged to the account. This amount due was not paid by either Donald or Maudie. On July 13, 1984, Donald and Maudie were divorced.

Several attempts were made by the bank to collect the past due amount from Donald. However, no attempt was made to collect the amount due from Maudie. After several unsuccessful collection attempts, the bank filed a cause of action against Donald and Maudie, claiming that they were jointly and severally liable for the amount due on the Visa charge card. A trial was held before the bench on February 24, 1986, after which the municipal judge ruled in favor of the bank, finding that the defendants were jointly and severally liable to the bank for $703.75 plus ten percent interest and costs. Judgment was granted in favor of the plaintiff accordingly. It is this decision that Maudie Harrell, the defendant-appellant, appeals.

The defendant-appellant's first assignment of error is as follows:

"The Findlay Municipal Court committed error, prejudicial to defen-

dant Harrell, appellant, in rejecting 'out of hand defendants [sic] defense of laches.' (Memorandum Opinion)"

Before a trial court can dismiss a plaintiff's complaint based on a defense of laches the court must first find that the plaintiff neglected or omitted to do what in law should have been done within a reasonable length of time and that the lapse of time and other circumstances resulted in prejudice to the defendant. See, generally, 66 Ohio Jurisprudence 3d (1986) 414-426, Limitations and Laches, Sections 219-225. However, great delay is not sufficient to dismiss a claim on the grounds of laches. The court must also find that the passage of time resulted in a change in the defendant's position or condition or a loss of evidence important to the defendant's case. In the case at bar there was nothing that proved the passage of time resulted in any prejudice to the defendant-appellant. Maudie did not claim that any evidence favorable to her was lost as a result of the lapse of time, and the only change in circumstances she had encountered was her divorce from Donald and subsequent remarriage. We do not believe either event resulted in a change of circumstances that prejudiced the defendant-appellant.

At the time Maudie and Donald divorced they entered into a settlement agreement which stated in pertinent part:

"Husband and Wife agree that each shall be responsible for the debts now existing in their names individually. Neither wife nor husband shall incur debts or obligations so charged or otherwise incurred."

Given the foregoing language, even if this court should affirm the decision of the municipal court, Maudie would have a claim against Donald for any amounts she might have to pay on the judgment since the debt existed in Donald's name only. Thus, we find that

Maudie suffered no prejudice as a result of any lapse of time. The defendant-appellant's first assignment of error is overruled.

The defendant-appellant's second, fourth and fifth assignments of error relate to Maudie's personal liability to the Bank. Therefore, we shall address them together:

"2. The Findlay Municipal Court committed error, prejudicial to defendant Harrell, appellant, in its finding that 'past performance of defendants certainly acknowledges their intent and liability on the card,' in so far as liability extends to an authorized user as found by the Trial Court. (Memorandum Opinion)"

"4. The Findlay Municipal Court committed error, prejudicial to defendant Harrell, appellant, in 'finding that defendants Harrell and Fulk are liable, jointly and severally, on the account.' "

"5. The Findlay Municipal Court committed error, prejudicial to defendant Harrell, appellant, in rejecting defendant's defense of lack of contractual privity."

There is no dispute that Maudie was not a cardholder since the Visa credit card was in Donald's name only. However, the bank argues that Maudie was an authorized user and is liable for the amount due on the account pursuant to R.C. 1303.39(B), which states in pertinent part:

"An authorized representative who signs his own name to an instrument:

"(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

"(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representa-

tive signed in a representative capacity * * *."

First, if we were to accept the bank's argument we would note that the only evidence presented at trial that showed what purchases Maudie made on Donald's Visa charge card were copies of four charge slips totaling $322.67. Therefore, according to this section of the Revised Code, Maudie could be held liable for only those purchases for which she signed, or purchases totaling $322.67. However, we do not believe this section of the code applies to the case at bar. R.C. 1303.39(B) refers to an "instrument" signed by an authorized representative. The term "instrument" is defined in R.C. 1303.01(A)(5) as a "negotiable instrument." A writing is negotiable only if it is a draft, a check, a certificate of deposit or a note that is payable in money "to order" or "to bearer" or contains words of negotiability. See R.C. 1303.03(B); 11 American Jurisprudence 2d (1963) 144-145, Bills and Notes, Section 105. The charge slips signed by Maudie were not checks, drafts or certificates of deposit. While they may be considered to be notes they do not contain words of negotiability; therefore, they are not negotiable instruments. Since the charge slips are not negotiable instruments, and R.C. 1303.39(B) pertains only to negotiable instruments, we find that this section of the Ohio Revised Code is not applicable to the case at bar. Thus, Maudie cannot be held liable under R.C. 1303.39(B).

In its memorandum opinion the trial court found that Maudie's argument that she was not liable for reason of lack of contractual privity was specious since payments were made on the Visa account from Donald and Maudie's joint checking account and Maudie continued to use the credit card. We do not accept the trial court's reasoning. This court does not believe that making payments on the Visa account from Donald and Maudie's joint checking account created a contract between Maudie and the bank. First, it is common practice in today's society for married couples to have a joint checking account from which one or both parties write checks. It is also common for one of the parties to write checks to pay the debts of the other. This practice does not impose liability on the party not responsible for the debt. The fact that Maudie shared a checking account with Donald and wrote some of the checks to pay amounts due on the Visa account will not be interpreted as an agreement by her to assume responsibility for the debt.

We also disagree that Maudie's continued use of the credit card resulted in her being liable for the balance due on the account. Again, we would point out that Maudie was not a cardholder. The Visa Card Agreement, Cardholder Payment Schedule and Schedule of Charges include a clause that imposes liability on the cardholder only:

"LIABILITY. Cardholder assumes liability for, and agrees to pay for purchases and cash advances made by cardholder *or any authorized person* through use of the Visa Credit Card or any other means * * *." (Emphasis added.)

At trial, Everett Burns, a former collections employee of the bank's credit card department, testified:

"The primary person, or the person in whose name the account is assumes any liability if he lets anyone use that card. That's the best I can put that. In other words, if someone else uses that card he assumes the liability. And that's stated — I believe — in the liability agreement."

In *Standard Oil Co.* v. *Steele* (1985), 22 Ohio Misc. 2d 27, 22 OBR

308, 489 N.E. 2d 842, syllabus, the court held:

"Where a credit cardholder, who was under no compulsion by fraud, duress or otherwise, voluntarily permits the use of his or her credit card by another person, the cardholder has authorized the use of that card and is thereby responsible for any charges as a result of that use, even if he or she requested that the other person not charge over a certain amount or make charges on it only for specified purposes. The user has apparent authority to use the card even after actual authority ceases; provided, however, that the cardholder is not liable for use of the card after the issuer has been notified that actual authority for others to use the card no longer exists."

A review of the Visa Card Agreement liability clause, the testimony of Everett Burns, and the court's decision in *Standard Oil Co.* v. *Steele, supra,* lead us to hold that Maudie could not be held liable for purchases made by her on Donald's Visa charge card as long as she was an authorized user of the card. Maudie testified at trial that Donald gave the credit card to her and directed her to make certain purchases. Donald testified that he did not give Maudie permission to use the charge card; in fact, he claimed that he was not even aware that he had a Visa charge card. The bank testified that Donald never notified the bank that Maudie was not authorized to make charges on his Visa account. After hearing all the evidence and weighing the credibility of the witnesses, the trial court found that Maudie was an authorized user. This court finds that there was sufficient evidence upon which the trial court could reach this conclusion. Since Maudie was an authorized user, we hold that she is not liable for any purchases made by her on Donald's Visa account. The defen-

dant-appellant's second, fourth and fifth assignments of error are well-taken.

The defendant-appellant has asserted the following assignments of error which relate to Sections 1601 *et seq.*, Title 15, U.S. Code. We shall consider them together:

"3. The Findlay Municipal Court committed error, prejudicial to Defendant Harrell, Appellant, in finding that the testimony of plaintiff's employees established that proper forms and procedures were employed as the testimony in no way established compliance with U.S.C. Chapter 15, Section 1601 et seq."

"6. The Findlay Municipal Court committed error, prejudicial to defendant Harrell, Appellant, in failing to find that plaintiff's conduct violated consumer protection and truth in lending under U.S.C. Chapter 15, Section 1601 et seq."

"7. The Findlay Municipal Court committed error, prejudicial to defendant, Harrell, appellant, in failing to award statutory damages with attorney fees for defense of this cause and violation of U.S.C. Chapter 15, Section 1601 et seq."

Section 1640, Civil Liability, Title 15, provides the following:

"(a) Individual or class action for damages; amount of award; factors determining amount of award. Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter [Section 1631 *et seq.,* Title 15, U.S. Code] or chapter 4 or 5 of this title [Section 1666 *et seq.*] with respect to any person is liable to such person * * *."

It has been established that the bank never offered or extended credit to Maudie Harrell. Under the clear language of the Act any failure by a creditor to comply with the requirements of the Act with respect to

any person to whom credit is extended or offered makes the creditor liable to *that person.* Under the facts of this case there can be no failure to comply with the requirements of the Act with respect to Maudie Harrell because she never sought or received an extension of credit from the bank. The third, sixth and seventh assignments of error are overruled.

*Judgment affirmed in part and reversed in part.*

MILLER, P.J., and SHAW, J., concur.