FAHEY BANKING COMPANY, Appellee,

v.

ADAMS, et al., Appellants.

[Cite as *Fahey Banking Co. v. Adams* (1994), 98 Ohio App.3d 214.]

Court of Appeals of Ohio,
Marion County.

No. 9–94–16.

Decided Oct. 28, 1994.

*Ricketts & Onda* and *Martin J. Hughes,* for appellee.

*Dean R. Washburn,* for appellants.

---

HADLEY, Judge.

Defendants-appellants, Warren Adams and SMADA Investments, Inc. ("appellants"), appeal from a judgment entry of the Marion County Court of Common Pleas. The trial court awarded plaintiff-appellee, Fahey Banking Company ("appellee"), $23,850 plus interest upon finding several defendants liable for a scheme to obtain cash through falsified credit card transactions.

Appellee filed a complaint on April 17, 1990 and named as defendants: Warren Adams ("Adams"), SMADA Investments, Inc. ("SMADA"),[1] Marshall Craig

---

1.  SMADA was formerly known as "SMADA Investments of Ohio."

("Craig"),[2] Burton Hale ("Hale"), and Gerald and Dianna Shook ("the Shooks").[3] In the complaint, appellee alleged that defendants had engaged in a scheme to defraud by submitting credit card slips to obtain cash at Jerry's Hair Design, the Shooks' business. On February 19, 1991, appellants filed an answer denying the wrongdoing. The trial commenced on November 4, 1993. On November 29, 1993, appellee filed a motion for sanctions for appellants' failure to comply with discovery requests and asked the trial court to enter a default judgment or in the alternative accept all matters pertaining to agency and authority as established.[4]

The trial court, in its decision filed on December 2, 1993, made the following conclusions. The defendants, Adams, Hale, Craig, and the Shooks, engaged in conduct which allowed them to obtain cash through Jerry's Hair Design by the unauthorized use of credit cards. These transactions "were conducted ostensibly for the benefit" of SMADA and Jerry's Hair Design. Furthermore, even though each defendant was not a participant in all the transactions, Hale, Craig, and Adams acted as agents for SMADA with the authority of Adams. Adams' testimony, claiming no knowledge of these transactions, was unbelievable; however, even if believed, he had vested Hale with ostensible and actual authority to act on his behalf and on the behalf of SMADA and Warren Adams Investment Company ("WAIC").[5] Furthermore, Hale, with the consent of Adams, had sold an interest in SMADA to Craig. Hale also granted authority to Craig to conduct credit card transactions with Shooks to further their business as well as SMADA. This authority was "at least ostensible and by inference actual." From these findings, the trial court concluded, in its judgment entry of December 28, 1993, that the defendants were joint and severally liable to appellee.[6] As indicated above, only Adams and SMADA are bringing this appeal.

2. Craig was involved in bankruptcy proceedings and appellee's brief states that he entered into a settlement prior to trial.

3. The record contains a settlement entry between the Shooks and appellee from the United States Bankruptcy Court.

4. Appellee sets forth appellants' failure to respond to discovery requests as an assignment of error. At the trial court, there appears to be no direct ruling on this motion. Even if there was a ruling, the record fails to contain a notice of cross-appeal as required by App.R. 4(B)(1). For these reasons, as well as our holding in the instant case, we do not address this issue.

5. At one point in Adams' testimony, he described WAIC as his company "with several groups of companies." These companies were apparently comprised of real estate and various funds and included the later-formed SMADA.

6. This judgment entry did not include Craig. Two other judgment entries were made on January 24, 1994 and February 14, 1994, correcting the omission of court costs and an endorsement from the December 28 judgment entry.

It is from these judgment entries that appellants assert the following assignments of error:

### Assignment of Error No. 1

"The decision and judgment of the trial court is manifestly against the weight of the evidence and contrary to law."

### Assignment of Error No. 3

"The trial court should have limited the liability of defendant/appellant to transactions involving his own credit cards."

We note that appellants have withdrawn their second assignment of error and, since the remaining assignments of error are interrelated, we will consider them jointly.

For clarity, we first briefly describe the procedure and events of the transactions, as discussed in the record, which lead to this appeal. Per merchant agreements, businesses are allowed to accept credit cards for sale of merchandise or services, not cash advances. If purchases are over $50, authorization must be obtained from the appropriate banker system.[7] When merchants present the slips to financial institutions, they get immediate credit and may withdraw money from their account. In the instant case, Jerry's Hair Design had a merchant account with appellee. Credit cards were presented at Jerry's Hair Design to obtain cash advances, although some of the slips fraudulently stated that purchases were made for supplies. The amount of the charges was recorded on deposit slips for the checking account of Jerry's Hair Design and a check was then written out in order to obtain the cash.[8] Apparently these credit card transactions were then rejected by the card issuer resulting in the loss to appellee.

█ Appellants argue that there is "virtually no evidence" that they participated in the transactions, or gave authority to anyone to engage in these transactions to secure funds. They maintain that no funds were received by appellants and that the transactions were merely personal transactions by the individual cardholders and, at best, the maximum liability for each individual cardholder should be limited respectively.

█ When deciding whether the trial court's judgment is against the manifest weight of the evidence, the reviewing court must presume that the findings of

---

7. Banker systems were identified in the record as large credit card processors.

8. It appears from the record that Jerry's Hair Design retained small amounts of cash acquired in the various transactions.

the trial court are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. Therefore, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case" should be upheld. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Deference to the trial court's findings is based on the court's superior ability to observe the witnesses and weigh their credibility. *Seasons Coal Co., supra.*

As stated in *Klein v. Equitable Life Assurance Soc.* (1984), 17 Ohio App.3d 50, 17 OBR 105, 477 N.E.2d 1190, syllabus, "[r]elief on the ground of fraud can be held only against those who are shown to have been parties thereto; it cannot be obtained against a stranger to the fraud." Such parties can include principals and agents whose acts are performed with actual or apparent authority. *Agosto v. Leisure World Travel, Inc.* (1973), 36 Ohio App.2d 213, 216–217, 65 O.O.2d 339, 341–342, 304 N.E.2d 910, 913; 51 Ohio Jurisprudence 3d (1984), Fraud and Deceit, Section 175. Generally, apparent authority may arise from a course of business or from a principal's spoken or written words or conduct which causes or permits a third person to act. 3 Ohio Jurisprudence 3d (1978), Agency, Section 55.

More specifically, in transactions regarding credit cards, if an individual voluntarily allows another to use his or her credit card, then "the cardholder has authorized the use of that card and is thereby responsible for any charges." *Std. Oil Co. v. Steele* (1985), 22 Ohio Misc.2d 27, 22 OBR 308, 489 N.E.2d 842, syllabus. The cardholder's responsibility is also extended to use of the card by apparent authority. *Id.* Apparent authority must be based on "some act of the principal which clothed the agent with apparent authority." *Elder–Beerman v. Nagucki* (1988), 55 Ohio App.3d 10, 561 N.E.2d 553, syllabus. The principal, however, need not benefit from the agent's fraudulent transactions. *DeSantis v. Smedley* (1986), 34 Ohio App.3d 218, 517 N.E.2d 1038, paragraph two of syllabus.

Contrary to appellants' contentions, the record contains evidence pointing both to Adams and SMADA's participation in some of the transactions as well as Adams' actions which conferred authority to engage in such transactions. The record shows that Adams and Hale were involved in various business dealings over several years that bestowed Hale with such authority. In his testimony regarding WAIC, Adams stated that Hale was "automatically an agent because he was my partner in the business."[9] This was reiterated when Adams was asked about Hale's involvement with SMADA.

---

9. Adams testified that no partnership papers had been filed, but that there was a business agreement between him and Hale.

With specific regard to SMADA, testimony revealed that Hale was the chief executive officer and shared in fifty percent of the profits. When questioned about Hale's authority to hire people, Adams responded negatively, but then added, "he could have done it as if he had chose[n] to as an agent." Adams also admitted that Hale's actions to obtain large investments were within his scope of authority. Furthermore, at one point, Hale told Adams that he had written a check out of the SMADA account (Hale's name was not on the account at the time) and Adams subsequently added Hale's name as signator to the account.

With regard to Craig's authority, there is testimony that Adams participated in a transaction to sell him some type of unit concerning SMADA investment property. A credit application for Craig lists SMADA and a one-third interest in one of its property interests under the description of assets. More importantly, Hale specifically told Mr. Shook that Craig was also involved in these transactions to aid SMADA in raising funds for the building. Likewise, Adams, when asked whether Hale could have hired Craig, responded affirmatively.

Adams' actions conferring authority and his participation in the transactions are also evident from Mr. Shook's testimony, as well as his own testimony, concerning the purchase of Jerry's Hair Design. The record demonstrates that Adams and Hale went to Jerry's Hair Design and discussed SMADA's investment scheme, for buying and remodeling the business, with Shook. This included discussion of using the money from the credit cards for that purpose. More specifically, Shook's testimony included the following:

"[T]hey were saying that they would, * * * they're doing it on my behalf and that they were really behind me in helping me and—and I, uh, let the two of them engineer it, * * * [t]hey were in there signing the forms there, uh, that had [to] be done."

Mr. Shook, at another point in his testimony, revealed that Adams acknowledged his interest in SMADA, that he was willing to go along with Hale, and that the money was going to be invested in the Shooks' business. Additionally, Adams testified that SMADA was interested in buying the property and that he took pictures of the business for that purpose.

Furthermore, the names on the various credit card slips, processed through Jerry's Hair Design and appellee, included Hale, Craig, and Adams.[10] In the record, copies of credit card slips containing Adams' name include the following transactions: January 12, 1989 for $1,500, January 14, 1989 for $1,500, and January 20, 1989 for $1,600. Adams' account statement for January indicates an additional charge of $650 made on December 20, 1988. Several corresponding

---

10. The record indicates that the total amount of cash advances received through Jerry's Hair Design was over $30,000.

checks from Jerry's Hair Design were made out to SMADA and Hale and numerous checks were written payable to cash.

Adams confessed that he personally participated in one of the credit card transactions at Jerry's Hair Design. He also testified that the December 20, 1988 credit card transaction was unauthorized. He, however, waited until May 24, 1989 to send any written notification to the credit card company regarding charges. Moreover, although Adams found out previously that Hale had his credit cards, there is no indication that he reported it to the police or timely reported the transactions or canceled the credit cards.[11]

Therefore, upon review of the above findings as well as the rest of the record, we find that they contain evidence from which the trial court made its conclusions. The trial court's holding was not against the manifest weight of the evidence. Moreover, based on the evidence, we reject appellants' assertion that use of the credit cards was unauthorized and, thus, liability should be limited. Appellants' first and third assignments of error are overruled.

Having found no error prejudicial to appellants herein, the judgments of the Marion County Court of Common Pleas are affirmed.

*Judgments affirmed.*

Evans and Thomas F. Bryant, JJ., concur.

---

11. Adams stated that Hale took his credit cards, without consent, while they were on a business trip.