[Cite as *Lewis v. Value Plus Furniture*, 2025-Ohio-194.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| LAVELL L. LEWIS | : | |
| ROY WEIGAND | : | |
| | : | C.A. No. 30130 |
| Appellee | : | |
| | : | Trial Court Case No. CVI2301837 |
| v. | : | |
| | : | (Civil Appeal from Municipal Court) |
| VALUE PLUS FURNITURE | : | |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 24, 2025

. . . . . . . . . . .

KESHA Q. BROOKS, Attorney for Appellant

LAVELL L. LEWIS, Pro Se Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Value Plus Furniture ("Value Plus") appeals from a judgment of the Miamisburg Municipal Court in favor of Lavell L. Lewis on Lewis's small claims complaint. The municipal court awarded Lewis $3,888.57, plus statutory interest. Because Lewis had voluntarily granted authorization to Roy Weigand to use her credit card to purchase

furniture from Value Plus, Lewis was responsible for the charges on her credit card. Accordingly, the judgment of the municipal court is reversed, and the matter is remanded for the trial court to enter judgment in favor of Value Plus.

**Facts and Procedural History**

{¶ 2} Lewis filed a small claims complaint against Value Plus on December 21, 2023, based upon an invoice that reflected an amount paid of $3,888.57 and a balance due of zero for furniture purchased by Wiegand. The complaint stated in part: "[Value Plus] did not call, nor will they deliver any items at all. They never even called to set anything up. They will not refund money either. . . . Roy S. Wiegand will be handling this on my behalf. (We would like to see the Judge on this)[.]" Lewis and Weigand resided together, although the nature of their relationship was unclear.

{¶ 3} On January 22, 2024, Value Plus filed a motion to dismiss Lewis's complaint and for sanctions. Value Plus noted that Weigand had previously filed a claim against it on these same facts; a trial had been held in August 2023, and the municipal court had ruled in Value Plus's favor and dismissed the complaint. As such, Value Plus asked the court to dismiss the complaint for failure to state a claim upon which relief could be granted, because the issue had already been resolved. Value Plus further argued that Lewis was "not a proper party to file" the claim because she had not purchased the furniture and her name was not on the receipt. According to Value Plus, this case had already been settled by the proper parties, namely Weigand and Value Plus.

{¶ 4} The court overruled Value Plus's motion to dismiss, and the matter was tried on March 27, 2024. Lewis appeared pro se with Weigand. The court initially granted

Weigand an opportunity to make an opening statement, as "the individual bringing this cause of action." We note, however, that the action was brought by Lewis, not Weigand, and insofar as Weigand was not an attorney, he should not have been permitted to present evidence or arguments on Lewis's behalf.

{¶ 5} The court then instructed Weigand to call his first witness. When Weigand called Lewis to testify, the court advised that Lewis and Weigand could make statements, but that, because Weigand was not an attorney, it was not appropriate for him to question Lewis. Weigand responded, "the only question I was going to ask her is that she gave me permission to use the car[d], because that's the only way she's involved." The court again indicated that Lewis was free to make a statement.

{¶ 6} Lewis was then placed under oath, and she testified that she had given Weigand permission to use her credit card. Lewis stated that the card "was used at the furniture store," but they never received any furniture. Lewis was asked by the court whether Weigand had had "blanket permission" to use her credit card or permission to use it only for specific purposes, and she responded that Weigand was allowed to use it for "[j]ust certain things." She stated that Weigand had only used her card a couple of times, and there had never been a problem previously.

{¶ 7} On cross-examination by Value Plus, Lewis acknowledged that her name and phone number were not listed on two receipts from Value Plus. Lewis also acknowledged the statement in her complaint that Value Plus had never contacted her. When asked how Value Plus could have contacted her when she was not identified on the receipts, Lewis responded, "I don't know." She acknowledged that she had filed a

dispute with her credit card company in the amount of $3,888.57, and that the credit card company had dismissed the dispute.

{¶ 8} Weigand was then placed under oath, and he made the following statement:

. . . [W]e were informed that her name . . . should have been on there, due to the fact that it was her credit card that was used. And we had clearly stated that I was the one that was the contact information. My phone number is all over . . . . . . . Lewis's name is nowhere on the actual contract with them. It's my name everywhere. And . . . they had more than one phone number to contact us.

{¶ 9} Weigand also stated that, during the earlier court proceedings, Value Plus had "already confirmed and approved that they had no proof nor any record of trying to contact me; no documents, no dates, no phone records, no records - -." Value Plus's attorney objected, arguing that Weigand was mischaracterizing the prior testimony; counsel asserted that, although no documents had been submitted, his client had testified that he had contacted Weigand several times. In response to a question by the court, Weigand stated that he was referring to testimony from a prior proceeding. But the court refused to get into the past testimony, stating that Weigand's argument was "that these are separate matters." Weigand confirmed the existence of "two completely separate transactions," and the court responded that, "if they are, in fact, separate transactions and separate matters, that testimony about the other incident cannot be brought here." Thus, the court sustained Value Plus's objection. Weigand then stated, "in closing . . . the reason that it was refused by her credit card company is it was contested too late," and

"by the time they did it, when they contacted [Value Plus], whoever they spoke with, they said that I could . . . pick the furniture up anytime, they were holding it for me."

{¶ 10} When questioned by Value Plus's attorney, Weigand acknowledged that his phone number and address were listed on the receipts and that he was the "contact person" for the sale. Weigand stated that he and his girlfriend, Misty, set up the order. He used Lewis's credit card to pay the balance due of $3,888.57. Although a "pick up date" of February 23, 2023, was on the receipt, Weigand stated that "we never established a date." Weigand indicated his understanding that all sales were final but questioned how that could be so when the store wouldn't deliver the product.

{¶ 11} One Value Plus receipt reflected the purchase of several items of furniture for a total price of $5,693.20, with a down payment of $1,804.63 paid with a credit card, and a balance due of $3,888.57. A second receipt, bearing Weigand's name, reflected that $3,888.57 had been paid in full, and a pick-up date of February 23, 2023 was listed on the invoice. Both invoices stated: "ALL SALES FINAL ● NO REFUNDS ● NO RETURNS ● NO EXCHANGES."

{¶ 12} Value Plus employee Moe Museitif testified that he had called Weigand on January 31, 2023, and Weigand had said, "don't deliver nothing." Museitif stated that he had subsequently contacted Weigand about delivery, and Weigand had told Musteitif not to call him again. During these calls, Museitif reminded Weigand that there were no purchase refunds.

{¶ 13} Museitif stated that a credit card dispute was filed for $3,888.57 with Lewis's credit card company, but the credit card charge was found to be valid. The furniture had

been stored in a warehouse, and Museitif had offered to deliver it or provide a store credit in the amount of $3,888.57.

**{¶ 14}** In response to questions by Weigand, Museitif stated that he did not have any records of his calls to Weigand or Weigand's refusal of delivery. He stated that the amount of $1,804.63 had been refunded to Weigand's American Express account. Value Plus objected on the basis that the $1,804 was not at issue in Lewis's claim, only the $3,888.57, arguing that what happened with the $1,804 was irrelevant. Weigand argued that both amounts were relevant because they were "on the actual invoice that he marked that was paid in full."

**{¶ 15}** The court overruled Value Plus's objection on the basis that it had "opened the door regarding disputes one way or another," and the court questioned the relevance of the credit card company's ruling on the dispute to the legal proceedings before it. The court stressed, however, that although it was allowing some information to be presented regarding the $1,804.63 because it was part of the transaction as a whole, only the $3,888.57 dispute was properly before the court. Despite the court's decision that the parties were not litigating the contract, but instead the credit card purchase, the court nonetheless permitted considerable testimony related to Weigand's contract with Value Plus which was irrelevant to Lewis's claim that the credit card transaction had been unauthorized.

**{¶ 16}** In its ruling, the court noted that there had been some testimony that Lewis had given Weigand permission to use her credit card, although she wasn't actually there for the transaction. The court also observed that Value Plus had accepted a credit card

and let Weigand sign on behalf of Lewis, after which she disputed the transaction with her credit card company. The court found:

> I am ruling that [Value Plus is] going to have to pay Ms. Lewis $3,888.57. Because had this been a criminal issue - - and I know it's not – but had somebody stolen Ms. Lewis's card, Ms. Lewis would have the ability to come after you civilly for allowing somebody to pay for something with Ms. Lewis's card. You didn't ever confirm with anybody regarding Ms. Lewis, that you knew she had permission to even do the card. . . . I'm just saying, regardless of Mr. Weigand's personal disputes and whatever happens - - so frankly, for that reason, in and of itself, yes, Mr. Weigand signed a contract. He was aware there were no refunds, and he was aware of all these things. But Ms. Lewis wasn't. Ms. Lewis never signed anything. But you charged her credit card in all the same.

{¶ 17} The court concluded, "regardless of whatever else might be going on, Ms. Lewis was charged, and didn't agree to any of these - - and it's clearly depicted, I'm not going to say it isn't. All sales are final, no refunds, no returns, no exchanges; it's clearly depicted. But Ms. Lewis didn't, in fact, agree to that. So, you have to pay Ms. Lavell Lewis . . . $3,888.57."

{¶ 18} The court issued its written decision on March 27, 2024, entering judgment in favor of Lewis and against Value Plus in the amount of $3,888.57, plus statutory interest and court costs. It also stated that the action between Weigand and Value Plus was dismissed.

## Arguments and Analysis

{¶ 19} Value Plus appeals from the trial court's judgment. It does not set forth specific assignments of error, but we interpret its arguments to be that the trial court erred in granting judgment to Lewis when she and Weigand both admitted that Weigand had been authorized to use her credit card. Value Plus asks us to reverse the trial court's decision because Weigand was "an authorized user" on Lewis's credit card and an "authorized agent" with "the ability to bind her to sales contracts." Value Plus contends that, because Lewis and Weigand both testified that Weigand had explicit permission to use the credit card, Weigand's remedies were either to accept delivery of the goods specified in the contract or a store credit. However, Value Plus asserts that, because Lewis was not a party to the contract, she could not seek any remedy related to the contract.

{¶ 20} In a pro se brief signed by Lewis and Weigand, they seem to assert that 1) Lewis gave Weigand permission "to use the card to purchase furniture," 2) Value Plus accepted the card without knowing whether Lewis had given permission for its use, 3) Lewis "did not sign any contract or paperwork at all," and 4) Value Plus "disregarded business equate [sic] by not delivering any furniture" and making no effort to contact Weigand or Lewis about delivery.

{¶ 21} Small claims courts "provide fast and fair adjudication as an alternative to the traditional judicial proceedings," in which attorneys may appear, but are not required to appear, on behalf of any party. *Cleveland Bar Assn. v. Pearlman*, 2005-Ohio-4107, ¶ 15. "The hearings are simplified, as neither the Ohio Rules of Evidence nor the Ohio

Rules of Civil Procedure apply." *Id.,* citing Evid.R. 101(D)(8) and Civ.R. 1(C)(4). Accordingly, "by design, proceedings in small claims courts are informal and geared to allowing individuals to resolve uncomplicated disputes quickly and inexpensively. Pro se activity is assumed and encouraged. The process is an alternative to full-blown judicial dispute resolution." *Id.* However, the nature of a small claims proceeding does not contemplate a non-attorney appearing on behalf of another party.

{¶ 22} The issue before the trial court here was a simple one: whether the credit card transaction by Weigand was authorized by Lewis. The contract between Weigand and Value Plus was not at issue, as Lewis was not a party to the contract. As such, the focus on the contract by the litigants and the trial court in resolving the issue raised in Lewis's complaint was misplaced. Both Lewis and Weigand testified that Lewis had authorized Weigand's use of her credit card for the transaction at issue. Lewis alone filed the small claims complaint against Value Plus, and Weigand was neither a party to the claim nor an attorney for Lewis. The municipal court improperly recognized Weigand as "the individual bringing this cause of action," and the court's judgment entry erroneously referred to Wiegand as "Plaintiff." The testimony regarding an alleged prior lawsuit between Weigand and Value Plus was not relevant to the plain issue before the court, namely determining whether Lewis had authorized the use of her card by Weigand.

{¶ 23} An "authorized user of another's credit card is not personally liable for the debt in the absence of an agreement to the contrary." *First Natl. Bank of Findlay v. Fulk,* 57 Ohio App.3d 44 (3d Dist. 1989), paragraph three of the syllabus. Further:

"Where a credit cardholder, who was under no compulsion by fraud, duress

or otherwise, voluntarily permits the use of his or her credit card by another person, the cardholder has authorized the use of that card and is thereby responsible for any charges as a result of that use, even if he or she requested that the other person not charge over a certain amount or make charges on it only for specified purposes. The user has apparent authority to use the card even after actual authority ceases; provided, however, that the cardholder is not liable for use of the card after the issuer has been notified that actual authority for others to use the card no longer exists."

*Id.* at 48, quoting *Standard Oil Co. v. Steele*, 22 Ohio Misc.2d 27, at syllabus (M.C. 1985).

{¶ 24} In *Steele*, the credit cardholder permitted the use of her card by a third party for the purchase of one tank of gas. *Id.* at 28. The third party and other parties charged multiple items on the card. *Id.* The cardholder advised the credit card company that the card was being misused on August 12, 1983, and she sought to recover all charges by others up to that date in the amount of $1,767.47. *Id.* In *Steele,* the municipal court noted that "unauthorized use" of a credit card meant a use of a credit card by a person other than the cardholder "who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." The court in *Steele* found that the cardholder was liable for the use of his card in the amount of $1,767.47. *Id.* The court cited *Martin v. Am. Express, Inc.*, 361 So.2d 597 (Ala. 1978), in which the plaintiff, Martin, had authorized his partner, McBride, to charge up to $500 on his personal credit card for the purpose of a joint business venture, but the charges by McBride exceeded $500; the Alabama court held Martin responsible for any purchases made

through the use of his card. *Steele* at 29, quoting *Martin* at 600. *See also Std. Oil Co. v. Leedham*, 1989 WL 148058 (5th Dist. 1989) (finding that the cardholder admitted authorizing limited use by his daughter, approving and adopting "the well-reasoned opinion . . . in *Steele*," and holding that the cardholder was liable as a matter of law for the charges made); *Fahey Banking Co. v. Adams*, 98 Ohio App.3d 214 (3d Dist. 1994), quoting *Steele* at syllabus ("[I]n transactions regarding credit cards, if an individual voluntarily allows another to use his or her credit card, then 'the cardholder has authorized the use of that card and is thereby responsible for any charges.' ").

**{¶ 25}** Based upon the foregoing, we conclude that Lewis, having given Weigand permission to use her card, was responsible for the $3,888.57 at issue. While the invoice made clear that there were no refunds, Value Plus was willing to deliver the furniture or issue a store credit; those remedies were available to Weigand, but because Lewis was not a party to the contract, those remedies were not available to her. She admittedly authorized the transaction and could not later rescind that authorization. Value Plus's argument is sustained.

**{¶ 26}** The judgment of the municipal court is reversed, and the matter is remanded for the trial court to enter judgment on behalf of Value Plus.

. . . . . . . . . . . . .


EPLEY, P.J. and LEWIS, J., concur.